Turner, J.
 

 The correctness of the judgment below depends upon whether appellee’s decedent, Andrew Gillum, was in the service of J. O. Wamsley or was an independent contractor.
 

 The usual test applied to determine whether such an arrangement as we iiave here under consideration creates the relationship of servant-or of independent contractor is that if the employer reserves the right to control the manner or means of doing the work, the relationship is that of master and servant," while if the manner or means is left to the operative who is responsible to the employer for the result only, an independent contractor relationship exists.
 

 As stated in 21 Ohio Jurisprudence, 628, Section 6:
 

 “Inasmuch as it is necessary to construe the contract in the light of all the surrounding circumstances, it is impossible to state a hard and fast rule as to what terms do or do not reserve the control in the master so as to make the employee a servant.”
 

 Under the heading of Indicia of Relationship, 27 American Jurisprudence, 485, Section 5, is to be found the following:
 

 “Although it is apparent, from an examination of cases involving the independent contractor relationship, that there is no absolute rule for determining whether one is an independent contractor or an employee, and that each case must be determined on its
 
 *375
 
 own facts, nevertheless, there are many well-recognized and fairly typical indicia of the status of an independent contractor, even though the presence of one or more of such indicia in a case is not necessarily conclusive. It has been held that the test of what constitutes independent service lies in the control exercised, the decisive question being as to one who has the right to direct what shall be done, and when and how it shall be done. It has also been held that commonly recognized tests of the independent contractor relationship, although not necessarily concurrent or each in itself controlling, are the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price, the independent nature of his business or his distinct calling, his employment of assistants with the right to supervise their activities, his obligation to furnish necessary tools, supplies, and materials, his right to control the progress of the work except as to final results, the time for which the workman is employed, the method of payment, whether by time or by job, and whether the work is pa*rt of the regular business of the employer.”
 

 In 31 Corpus Juris, 473, Section 75, it is said: “It is impossible to lay down a rule by which the status, of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Bach case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact. The principal consideration in determining the question is the right to control the manner of doing the work.” '
 

 Appellee’s brief contains the following statement:
 

 “We have rummaged through the authorities' — and the best definition we -have been able to find is contained in a note in 76 American State Reports, p. 382. We quote it, vis.; ‘Independent contractor. One who, exer
 
 *376
 
 cising an independent employment, contracts to do a piece of work according to Ms own methods and without being subject to his employer’s control, except as-to the result of the work.’ ”
 

 Testing the relationship by appellee’s definitionr Gillum was exercising an independent employment. The record discloses the following testimony of Wamsley:
 

 “Q. Will you state just what was the conversation,, as near as you can recall it? A. Well, he had finished hauling logs on another contract and he come — I had some logs at Sandy Springs up above where he lived and I was hauling those logs in my own truck and he-came to me and wanted a job of hauling.”
 

 The only other witness on the subject was the eighteen-year-old son of Gillum, who testified:
 

 “Q. Were you there when the conversation concerning this work took place? A. Yes.
 

 “Q. Now, will you tell, in your own words, just what was said? A. Well, we came down there about nine o’elo’ck one morning, we had finished one job and—
 

 “Q. For whom? A. For — well, on a different jobr and asked him if he had any work we could do with our truck and he said he had some logs to haul but figured on hauling them himself with his own truck and so he asked father what he would do it for per thousand and he told him and he told him then to go> ahead and haul some, and that is the job he was hauling on when he got hurt.”
 

 There also appears in the record the following testimony of Wamsley:
 

 ‘ ‘ Q. When you first had your conversation with Mr. Gillum outside of the fact that you knew that he previously had always finished a job that he started, was there any definite statement about the — to the fact that he would haul them all? A. No. He was to haul all the logs but there was no definite time set to 'haul them. * * *
 

 
 *377
 
 “Q. Well,
 
 you
 
 were talking about a contract you had with him. A. My contract with him was that he was to haul a certain amount of logs or. what logs I had at Sandy Springs, because I didn’t know what amount I had until I measured them, and I gave him the job of hauling all logs here at Sandy Springs. However, there was no definite time for completion of this contract and I told Mr. Gillum at the time that he could haul these logs and if he got anything else to do in the meantime he should go do that and come back and finish the logs.”
 

 In discussing definitions it is said in 27 American Jurisprudence, 483, Section 2: “Examination of the definitions substantially adopted by most of. the courts makes it evident that one of the basic elements of the independent contractor relationship is the fact that the contractor has an independent business or occupation. ”
 

 However, the independent business or occupation of the operative, while of prime importance, will not always be determinative. The right of the employer to control the manner or means of doing the work will still create the relation of master and servant. Counsel for appellee contend that Wamsley had the right to control by reason of the claimed fact that he designated where in his yard the logs should be unloaded. We agree with the Court of Appeals that: “The plaintiff’s claim that this fixing of the destination amounted to a control of the work is untenable.” Appellee’s further claim of control was the right of Wamsley to designate certain types of logs to be brought in at certain times. It was upon this claim of control that the Court of Appeals affirmed the judgment of the trial court. The question then is whether such control is of the manner and means or of the result only.
 

 The record discloses the following questions to and answers by Mr. Wamsley:
 

 “Q. What supervision did you have over him—
 
 *378
 
 any? A. None whatever except I told him to dump-them on the scales or in the yard. * * *
 

 “Q. Was there any particular sized logs he was to-bring in first? A. No.
 

 “Q. Just all logs regardless of size or condition?' A. Yes.
 

 “Q. You didn’t take the'old ones first? A. No,, all the same age, all cut the same time.”
 

 William Gillum, the son, was asked and answered as-follows:
 

 ‘ ‘ Q. In this' conversation was there any stipulation as to what sized logs or what type of logs was to be-hauled? A. Well, if he wanted a certain log in the-mill to saw out something and didn’t have it there he-■would tell us what size he wanted and we would bring-that to him. * * *
 

 “Q. Did Mr. Wamsley, at any time, when you were-hauling the logs, designate any particular type or size-of logs which he wanted you to haul? A. At times he-did.
 

 “Q. These were logs which he needed at the particular time for certain lumber which he desired to-cut? A. Yes.”
 

 Accepting the testimony of the son and disregarding that of Wamsley we find no control or right of control of anything but the result. There is no evidence that Wamsley told Gillum
 
 how
 
 to load or unload the logs wanted or by what means or route to bring them. All that the son’s testimony on this point amounts to is that Wamsley told Gillum
 
 what
 
 to bring, not how to-bring it.
 

 It is claimed that Wamsley’s right to designate certain types of logs for delivery at certain times might involve more work or time in loading. If this was a right reserved to Wamsley at the time of making the contract it must have been considered in fixing- the price for the work.
 

 
 *379
 
 Much reliance is placed by appellee on the case of
 
 Bandt
 
 v.
 
 Farmers Co-op. Elevator Co. of Revillo,
 
 recently decided by the Supreme Court of South Dakota and reported in 5 N. W. (2d), 897. In that case representatives of the employer not only directed the manner of doing the work but actively participated in the work. As said by the Supreme Court of South Dakota: “The most that he [the alleged independent contractor] was doing was aiding in the moving of the car as directed by Mr. Jenny [employer’s representative].”
 

 To summarize the evidence as disclosed by the record:
 

 . 1. Gillum was exercising an independent employment — that of hauling for others in his own truck and with his own help.
 

 2. Gillum was not employed generally or continuously in Wamsley’s business but was doing only a specific job of hauling definite logs from and to definite places. When those logs had been transported to Wamsley’s mill, Gillum was through.
 

 3. Gillum fixed his compensation on the entire job which included any help Gillum might need or use.
 

 4. The evidence is clear that for this job Wamsley did not pay the son. There is no evidence tending to show that Wamsley hired the son.
 

 5. Gillum was free to choose his own means of transportation; his own route; his own time of working ; his own means and method of loading and unloading; and his own help, if any.
 

 In holding the person was not an independent contractor, Judge White said in the case of
 
 Pickens & Plummer
 
 v.
 
 Diecker & Bro.,
 
 21 Ohio St., 212, 215, 8 Am. Rep., 55:
 

 “We think Wright was a mere servant or agent, and cannot be regarded as a contractor within the meaning of the cases bearing on the subject. Shear. & Redf. on
 
 *380
 
 Neg., Sections 73, 76. His contract of employment did not bind Mm to produce any given result. His time belonged to Ms employers, and be was entitled to be paid irrespective of results.”
 

 In tbe instant case Gillum’s contract did bind him to produce a given result, to wit, tbe transportation of certain logs from and to certain places. Gillum’s time did not belong to bis employer and Gillum was entitled to be paid only for results.
 

 Section 1465-61, General Code, provides that tbe term “employee,” “workman” and “operative” as used in tbe Workmen’s Compensation Act shall be construed to mean: “Every person
 
 in the service
 
 of any person, firm or private corporation * * * employing three or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of Ms employer.” (Italics ours.)
 

 Section 1465-60, General Code, provides that the following' shall constitute employers subject to'the provisions of the Workmen’s Compensation Act:
 

 “2. Every person * * * that has
 
 in service
 
 three or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written. * * * ” (Italics ours.)
 

 In the case of
 
 State, ex rel. Bettman, Atty. Genl.,
 
 v.
 
 Christen,
 
 128 Ohio St., 56, 190 N. E., 233, this court held:
 

 “Sections 1465-60 and 1465-61, General Code, are
 
 in pari materia
 
 and must be construed together.”
 

 It is to be noted that “in service” is the test of the foregoing sections.
 

 The following definitions of master and servant and
 
 *381
 
 independent contractor are set ont in 1 Restatement of The Law of Agency, 11, Section 2:
 

 ‘
 
 ‘
 
 (1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the; other in the performance of the service.
 

 “ (2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is' controlled or is subject to the right to control by the master.
 

 “(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other’s right to control with respect to his physical conduct in the performance of the undertaking.”
 

 At page 483, Section 220,
 
 ibid,
 
 appears the following:
 

 “(1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other’s control or right to control.
 

 “(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
 

 “ (a) the extent of control which, by the agreement, the master may exercise over the details pf the work;
 

 “(b) whether or not the one employed is engaged in a distinct occupation or business;
 

 “(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
 

 “(d) the skill required in the particular occupation;
 

 “(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
 

 
 *382
 
 “(f) the length of time for which the person is employed;
 

 “(g) the method of payment, whether by the time or by the job;
 

 “(h) whether or not the work is a part of the regular business of the employer; and
 

 “(i) whether or not the parties believe they are creating the relationship of master and servant.”
 

 As stated in 27 American Jurisprudence, 488, Section 7:
 

 “As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control, at least to enable him to see that the contract is performed according to specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for a relation of master and servant is not inferable from a reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative, so long 'as he does it in accordance with the contract. The control of the work reserved in the employer which effects a master-servant relationship is control of the means and manner of performance of the work, as well as of the result; an independent contractor relationship exists where the person doing the work is sribject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Thus, a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the person employed as to the details or method of doing the work, but is only a provision that the employer may see that the contract is carried out according to the plans.” See, also, 21 Ohio Jurisprudence, 626, Section 4;
 
 Miller
 
 v.
 
 Metropolitan
 
 
 *383
 

 Life Ins. Co.,
 
 134 Ohio St., 289, 291, 16 N. E. (2d), 447;
 
 Industrial Commission
 
 v.
 
 McAdow,
 
 126 Ohio St., 198, 184 N. E., 759;
 
 Klar
 
 v.
 
 Erie Rd. Co.,
 
 118 Ohio St., 612, 162 N. E., 793;
 
 Hughes
 
 v.
 
 Railway Co.,
 
 39 Ohio St., 461;
 
 Pickens & Plummer
 
 v.
 
 Diecker & Bro., supra.
 

 The evidence in this case discloses that the contract in question created the relationship of independent contractor and not of servant.
 

 We have examined a number of logging and trucking cases from other jurisdictions involving the distinction between an independent contractor and a servant. As each of these cases depended upon its particular facts applied under the respective workmen’s compensation laws it would serve no purpose to review them here. Suffice it to say, that all of those' cases uphold th© tests which we have applied.
 

 In the case of
 
 Coviello
 
 v.
 
 Industrial Commission,
 
 129 Ohio St., 589, 196 N. E., 661, this court held:
 

 “The Workmen’s Compensation Act was enacted for the purpose of providing a state insurance fund for the benefit of injured and dependents of killed employees and requiring contribution thereto by employers. If the relation of employer and employee does not exist the provisions.of the act have no application.”
 

 Therefore, the judgment of the Court of Appeals should be and hereby is.reversed and final judgment rendered for appellant.
 

 Judgment.reversed and final judgment for appellant.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Bell, JJ., concur.
 

 Williams, J., not participating.