OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio.  Attention:  Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public.  The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

City of Hamilton, Appellee, v. State Employment Relations Board; Amalgamated Transit Union, Local No. 738, Appellant. Transit Management of Hamilton, Inc., Appellee, v. State Employment Relations Board; Amalgamated Transit Union, Local No. 738, Appellant.
[Cite as Hamilton v. State Emp. Relations Bd. (1994), Ohio St.3d        .]
State Employment Relations Board -- Jurisdiction not precluded by R.C. 4117.01(C) in matters where National Labor Relations Board has not declined jurisdiction over employees working pursuant to a contract between a private and public employer -- City is public employer of public transit system's employees, when -- "Right to control" test, applied.
(No. 93-1021 -- Submitted April 20, 1994 -- Decided September 14, 1994.)
Appeal from the Court of Appeals for Franklin County, Nos. 92AP-1345 and 92AP-1346.

Beginning in the early 1970s, appellee, city of Hamilton entered into management contracts with various corporations in order to operate the city's public transit system.  In 1987, the city conducted a competitive bidding procedure and awarded a management contract to ATE Management and Service Company, Inc. ("ATE").  ATE assigned certain rights and obligations under the management contract to Transit Management of Hamilton, Inc. ("TMH") to operate the system.

The city receives federal and state funds for operating the transit system, and the city owns all of the fourteen buses used in the system and designates the bus routes.  The city leases a garage from a private entity to house the buses and the TMH office.  In addition, the city determines the bus fares, and fare monies collected are then deposited directly into a city revenue account.

On the other hand, TMH is responsible for managing day-to-day personnel matters and assigning bus drivers to routes.  While the city has no direct contact with bus drivers or mechanics, TMH's general manager maintains informal daily contact with a city representative.

On October 18, 1988, appellant, Amalgamated Transit Union, Local No. 738 ("union") filed a request for recognition with the State Employment Relations Board ("SERB"), naming the city of Hamilton as the employer. The request indicated that the union sought to represent approximately twenty-three bus drivers and mechanics. The city subsequently objected to the request, asserting that TMH was the employer of the bus drivers and mechanics, and that these workers were not "public employees" pursuant to R.C. 4117.01(C). The matter thereafter proceeded to an evidentiary hearing before a SERB hearing officer. On December 19, 1989, the hearing officer issued a recommendation that SERB dismiss the union's request for recognition. In relevant part, the hearing officer concluded as follows:

"*** First, applying the 'right of control' test, I conclude that the employer of the employees in question is TMH. Thus, the petition is defective because it names the City as the employer, and the City is not the public employer of the employees here sought to be represented. Second, even if TMH had been named as the employer, the NLRB has not, in fact, declined jurisdiction over these employees on the basis that they are employees of a public employer. Thus, the employees are not 'public employees' as defined by {4117.01(C), and they do not fall within SERB's jurisdiction."

However, in an opinion issued by SERB, the board rejected the hearing officer's conclusions and recommendation as follows:

"The facts in this case clearly indicate that TMH lacks both the independence and decision making authority to carry out operation of the transit system on its own. TMH is a management business. It does not have its own resources (money, equipment or manpower) to run the transit system. Instead, for a fee, it performs essential managerial functions that are necessary for daily operation of the system. The City has the authority and resources to operate the transit system and TMH is obliged under the management agreement to adhere to the City's rules and regulations for doing so. The fact that the City, through an agreement, has delegated its management responsibilities to TMH does not in this case establish the latter as an independent contractor.

"TMH is not the employer of the bus drivers and mechanics at issue here, but is instead an agent of the City of Hamilton.

"Since the City of Hamilton is a public employer and is the employer of the employees in question, it is clearly in SERB's jurisdiction to entertain the request for voluntary recognition."

The city and TMH then filed appeals from the SERB decision before the court of common pleas. The trial court relied on a National Labor Relations Board ("NLRB") opinion concerning the "right to control" test (Baystate Bus Corp. [1979], 240 N.L.R.B. 862), and held, unlike SERB, that TMH, not the city, was the employer of the transit workers in issue.

Upon appeal by the union, the court of appeals affirmed, holding that NLRB declination of jurisdiction is an obligatory prerequisite for employees working under a private contract to be considered "public employees" under R.C. 4117.01(C). In relevant part, the appellate court reasoned:

"*** Given the discretion involved in interpreting any

given set of facts under the 'right of control' test, the definition in R.C. 4117.01(C) eliminates the potential for conflicting decisions from the NLRB and SERB, and defers to the primary authority of the NLRB in collective bargaining matters.

"Thus, strict application of the definition of a public employer under these circumstances dictates that the employees herein are not public employees, NLRB having not declined jurisdiction over them."

The cause is now before this court pursuant to the allowance of a motion to certify the record.


Frost & Jacobs, Donald L. Crain and William L. Sennett; and Gary L. Sheets, Law Director, for appellee city of Hamilton.

Thomas P. Hock, for appellee Transit Management of Hamilton, Inc.

Stewart Jaffy & Associates Co., Stewart R. Jaffy and Marc J. Jaffy, for appellant Amalgamated Transit Union, Local 738.

A. William Sweeney, J.     The determinative inquiry in this appeal is whether the transit workers in issue are "public employees" of the city of Hamilton pursuant to R.C. 4117.01(C). For the reasons that follow, we hold that the transit workers are public employees, and therefore we reverse the judgments of the courts below, and reinstate SERB's determination.

R.C. 4117.01(C) provides:

"'Public employee' means any person holding a position by appointment or employment in the service of a public employer, including any person working pursuant to a contract between a public employer and a private employer and over whom the national labor relations board had declined jurisdiction on the basis that the involved employees are employees of a public employer[.] ***"

The courts below strictly interpreted the foregoing language following the word "including" to mean that the NLRB must first decline jurisdiction over the transit workers before they could be statutorily considered as public employees. We disagree with this strict construction, inasmuch as it ignores the liberal construction mandate of R.C. 4117.22.1 As the union correctly points out, the language in R.C. 4117.01(C) referring to the declination of NLRB jurisdiction is merely illustrative of who may be considered to be public employees for the purposes of collective bargaining. To adopt the lower courts' interpretation would require us to change the words "and over whom" in the statutory provision to read "but only where." In our view, the statutory provision simply relates one of many situations where SERB may determine certain employees to be public employees. Thus, the fact that the NLRB did not or has not declined jurisdiction over the transit workers in issue is not determinative of SERB's jurisdiction in this case.

Having determined that SERB jurisdiction is not precluded by R.C. 4117.01(C) in matters where the NLRB has not declined jurisdiction over employees working pursuant to a contract between a private and public employer, the question then turns to whether SERB was correct in finding that TMH was an agent of

the city rather than an independent contractor.

All parties agree that the "right to control" test is determinative of whether the instant transit employees are public employees of the city or simply employees of TMH. As this court held in paragraph two of the syllabus in Gillum v. Indus. Comm. (1943), 141 Ohio St. 373, 25 O.O. 531, 48 N.E.2d 234:

"Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created." See, also, Natl. Transp. Serv., Inc. (1979), 240 N.L.R.B. 565, where it was stated that under the National Labor Relations Act the "right to control" test contemplates "whether the employer has sufficient control over the employment conditions of its employees to enable it to bargain with a labor organization as their representative." Id. at 565.

In reviewing the various indicia of control, or lack thereof, in the instant cause, the city and TMH submit that the management agreement between the two entities provides that TMH is the employer of the transit workers in issue and is responsible for the day-to-day operation of the transit system. In addition, SERB found that paychecks to the transit workers are drawn on a payroll account in the name of TMH and signed by TMH's general manager.

On the other hand, as found by SERB, it readily appears that the city owns, controls and sets policy for the transit system, and that the contract between ATE and the city specifically categorizes operating expenses as an obligation of the city. The city provides all of the funding for the transit system, owns all the buses, designates the bus routes, and sets the amount of fares charged for bus rides. In addition, according to SERB, the general manager of TMH was selected with the approval of the city.

Against this backdrop, the SERB opinion reviewed several aspects of the management contract and concluded:

"It is unnecessary to look any further than the four corners of the contract to conclude that the City, and not TMH, is responsible for the payment of the employees' wages and that the functions provided by TMH in carrying out such are only ministerial in nature. The conclusion that TMH is the employer in this case because it does the paperwork for deducting taxes and issues paychecks from an account bearing its name (one established with City revenue) is in parity with an argument that because a secretary or payroll clerk performs these same tasks, that person is thereby the employer."

In our view, SERB's conclusion that the city is the public employer of the transit employees is amply supported by the evidence. The city has delegated ministerial duties to TMH through the device of a management contract, while maintaining its right to control the details of the transit system. Given the fact that the city has total control of TMH's funding, we believe that TMH lacks the type of discretion to meaningfully

bargain with the union in the collective bargaining context that a true employer would possess.2  Thus, we agree with SERB that it had the requisite jurisdiction to entertain the union's request for recognition, since application of the "right to control" test indicates that the city of Hamilton is the employer of the transit workers, who are "public employees" pursuant to R.C. 4117.01(C).

Our holding is further compelled by the standard that SERB's findings are entitled to a presumption of correctness. See Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St. 3d 466, 471, 613 N.E.2d 591, 595, citing Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111-112, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1268.  While the lower courts purportedly applied the "presumption of correctness" standard, we believe their decisions amounted to nothing more than a substitution of judgment for what SERB correctly found to be the employment relationship of the transit workers to the city of Hamilton under the management contract in issue.

Therefore, based on the foregoing, we reverse the judgment of the court of appeals below, and reinstate the decision of SERB.

Judgment accordingly.

Douglas, Resnick and F.E. Sweeney, JJ., concur.
Moyer, C.J., Wright and Pfeifer, JJ., dissent.

FOOTNOTES:
1  R.C. 4117.22 provides:
"Chapter 4117. of the Revised Code shall be construed liberally for the accomplishment of the purpose of promoting orderly and constructive relationships between all public employers and their employees."
2  Our decision in this regard is similar to the reasoning of the National Labor Relations Board in Res-Care, Inc. (1986), 280 N.L.R.B. 670, 673:
"*** if an employer does not have the final say on the entire package of employee compensation, i.e., wages and fringe benefits, meaningful bargaining is not possible."  See, also, PHP Healthcare Corp. (1987), 285 N.L.R.B. 182, 184.

Moyer, C.J., dissenting.    Despite my agreement with several important assertions of the majority, I respectfully dissent.  I agree that the provisions of R.C. Chapter 4117 are to be construed liberally to "promot[e] orderly and constructive relationships between all public employers and their employees."  R.C. 4117.22.  I agree also that a National Labor Relations Board ("NLRB") declination of jurisdiction over persons working pursuant to a contract between a public employer and a private employer is not the determinative event for a public employee.  Finally, I agree with the majority that the "right of control" test is appropriate to determine the status of public employee under R.C. 4117.01(C).

It is the application of that test, however, that generates my strong disagreement with the majority.  The NLRB announced its adoption of the right of control test in Natl. Transp. Serv., Inc. (1979), 240 N.L.R.B. 565.  This test analyzes "whether the nonexempt employer retains sufficient control over its employees' terms and conditions of employment so as to be capable of effective bargaining with the employees'

representative."  Id.  In Baystate Bus Corp. (1979), 240 N.L.R.B. 862, the NLRB applied the right of control test and concluded that the employees of a private Massachusetts corporation engaged in the operation and management of a municipal transit system were private employees.  In reaching this conclusion, the NLRB noted that "Baystate is responsible for the day-to-day operation of the transit system and has sole responsibility for hiring all of its employees; it unilaterally sets the wages, fringe benefits, hours, and working conditions for its employees.  The Company also retains the authority to discipline its employees without any interference from [the political subdivision]."  Id.  NLRB noted also that the political subdivision did not participate in the negotiation of the present collective bargaining agreement.  Id.  NLRB concluded that "Baystate retains sufficient control over the working conditions of its employees to enable it to engage in meaningful bargaining over conditions of employment with Petitioner."  Id. at 863.

The facts of the case at bar closely resemble those of Baystate.  The majority describes the responsibilities of Transit Management of Hamilton, Inc. ("TMH") as "managing day-to-day personnel matters and assigning bus drivers to routes."  The majority paints TMH's responsibilities with far too broad a brush.  The State Employment Relations Board ("SERB") hearing officer found that TMH's duties include hiring, firing, laying off, supervising, and disciplining employees, establishing and implementing work rules, safety and training programs, negotiating wages, benefits, and terms and conditions of employment, paying health insurance premiums, assigning drivers and managing payroll.  In other words, TMH is solely responsible for all aspects of the transit system's daily operations, without the need for advice or approval from the city.

The majority cites to several functions the city retains.  These include the city's provision of funding for the system, ownership of the buses, designation of bus routes and establishment of fares.  Also, the city approves the selection of TMH's general manager.  The majority's concentration on these elements is misplaced.  The clear teaching of the NLRB cases is that the proper area of focus is on those issues that arise most prominently in collective bargaining negotiations.  Those issues are not the overall source of funding of the transit system, the ownership of the buses, the bus routes and fares, or the identity of the employer's general manager.  Rather, they are such things as wages, benefits, disciplinary procedures, and training.  Federal courts have recognized these items as "the bread and butter issues of collective bargaining."  R.W. Harmon & Sons, Inc. v. N.L.R.B. (C.A.10, 1981), 664 F.2d 248, 251; Jefferson Cty. Community Ctr. v. N.L.R.B. (C.A.10, 1984), 732 F.2d 122.  A case that the majority itself cites in a footnote, Res-Care, Inc. (1986), 280 N.L.R.B. 670, recognizes this same conclusion, stating that the party responsible for setting wages and fringe benefits is solely able to participate in meaningful bargaining.  In the case at bar, that party is TMH, not the city.

The majority's reliance on Gillum v. Indus. Comm. (1943), 141 Ohio St. 373, 25 O.O. 531, 48 N.E.2d 234, is also

misplaced.  Gillum is a case decided under superseded workers' compensation law to decide the existence of an independent contractor relationship.  The policy considerations behind classifications in workers' compensation law do not mirror those appropriate to determine proper parties for collective bargaining.  Gillum involved a rule to determine ultimate responsibility for a worker's death; the instant case involves a rule of organization and efficiency for collective bargaining.  Gillum is therefore entitled to little or no weight.

Finally, as the SERB hearing officer recognized, the union has contractually recognized that TMH is the employer of its members.  The prior labor agreement entered into between TMH and the union specifically designates the union as the exclusive representative of the employees of the company.  I agree with the hearing officer that the equitable principle of estoppel militates against the union's argument that its members are now employees of the city.

The court of appeals was correct in stating that R.C. Chapter 4117 should be interpreted so as to avoid conflicts with NLRB's interpretation of federal law.  It is clear to me that if NLRB were asked to assert jurisdiction and it followed the reasoning of its past decisions, it would conclude that the union members are not public employees.

The majority's decision ignores or misapplies clear existing law, and places SERB on a collision course with NLRB. For these reasons, I respectfully dissent.

Wright, J., concurs in the foregoing dissenting opinion.

Pfeifer, J., dissenting.  There is no dispute that the employees in question are working pursuant to a contract between the city of Hamilton and TMH(as assignee).  R.C. 4117.01(C) simply and clearly addresses under what circumstances such employees are to be considered "public employees":

"'Public employee' means any person holding a position by appointment or employment in the service of a public employer, including any person working pursuant to a contract between a public employer and a private employer and over whom the national labor relations board has declined jurisdiction on the basis that the involved employees are employees of a public employer[.] * * *" (Emphasis added.)

Thus, the definition can include persons working pursuant to a contract with a private employer, but only if the NLRB has declined jurisdiction over the employees.  The General Assembly has left to the NLRB the determination of whether employees apparently employed by a private employer are actually controlled by a public employer, and thus "employed" by the public employer for collective bargaining purposes.  This is neither a strict nor liberal construction of the statute -- it is the only possible construction.

Therefore, the NLRB having not declined jurisdiction over these employees, I would hold that they are not public employees.

Moyer, C.J., concurs in the foregoing dissenting opinion.