OPINION
On October 10, 1996, Appellant, William Slauter, was allegedly injured by a truck driven by Appellee, Kristine Klink. At the time, both Slauter and Klink worked for Barrett Paving Materials, Inc. After receiving Workers' Compensation benefits for his injuries, Slauter filed suit against Klink, alleging that she had negligently operated the truck. However, Klink obtained summary judgment in the trial court, based on R.C. 4123.741, which gives employees immunity from tort actions brought by co-workers. Slauter then appealed to our court.
Slauter's appeal focuses on the proper test for deciding if a person is an employee for purposes of the immunity statute. In granting summary judgment to Klink, the trial court used a test found in R.C.4123.01(A)(1)(c). This statutory test lists twenty factors, and confers "employee" status when at least ten factors are met. According to Slauter, the trial court should instead have used an established common law test, which bestows "employee" status only if an employer retains the "right to control." In a related assignment of error, Slauter contends that if the common law test is applied, factual disputes preclude summary judgment.
 I
As an initial point, we note that our review of summary judgment decisions is de novo, i.e., we apply the standards the trial court used to decide the motion. Heinz v. Steffen (1996), 112 Ohio App.3d 174, 183. Summary judgment standards are well established, and allow judgment to be granted if the court finds:
 (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.
 Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. After reviewing the record, we find that the trial court properly awarded summary judgment to Klink, based on the undisputed facts and the applicable law.
In the present case, the trial court found Klink immune from suit under R.C. 4123.741, which states that:
 No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code.
Under this statute, a party whose injury is found compensable under Ohio's worker compensation statutes may not pursue additional statutory or common law remedies against a co-employee. Kaiser v. Strall (1983),5 Ohio St.3d 91, 92.
Many years ago, the Ohio Supreme Court indicated that "to qualify for immunity from tort liability under R.C. 4123.741, a person must be an employee as defined in R.C. 4123.01(A)(2)." Proctor v. Ford Motor Co.
(1973), 36 Ohio St.2d 3, syllabus. At the time Proctor was decided, R.C.4123.01(A)(2) defined "employee" as "[e]very person in the service of any * * * private corporation * * * but not including any person whose employment is casual and not in the usual course of his employer's business." Id. at 4. Notably, the statute did not define the phrase "in the service of." This phrase had been used for many years and was also not defined in predecessor statutes. See Gillum v. Indus. Comm. (1943),141 Ohio St. 373, 380, quoting from G.C. 1465-61 (a predecessor section to R.C. 4123.01). In Gillum, the Ohio Supreme Court reviewed various definitions of master, servant, and independent contractor, in order to decide the meaning of "in service." Ultimately, the Court held that:
 [w]hether one is an independent contractor or in service depends on the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created.
 Id. at paragraph two of the syllabus.
After the Proctor decision, R.C. 4123.01 was amended and the definitions of "employee" were moved to R.C. 4123.01(A)(1). The qualifying phrases restricting the definition of employee were also changed, but the statute still retained the phrase "in the service of." At that time, R.C. 4123.01(A)(1)(b) defined "employee" as:
 [e]very person in the service of any person, firm, or private corporation * * * that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single household and casual workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single employer, or (ii) is bound by any such contract of hire or by any other written contract, to pay into the state insurance fund the premiums provided by this chapter.
During the time this version of the statute was in effect, the Ohio Supreme Court continued to use Gillum's test for evaluating employee status. Specifically, in Bostic v. Connor (1988), 37 Ohio St.3d 144, the Ohio Supreme Court held that:
 [w]hether someone is an employee or an independent contractor is ordinarily an issue of fact. The key factual determination is who had the right to control the manner or means of doing the work.
 Id. at paragraph one of the syllabus, approving and following Gillum v.Indus. Comm. (1943), 141 Ohio St. 373. In Bostic, the Court also noted that if the evidence did not conflict or was admitted, the employment issue would be one of law, to be decided by a court. Id. at 146. However, if the claimant offered "some evidence" that he was an employee instead of an independent contractor, the matter would become a jury question. Id. at 146-47.
As we mentioned earlier, Slauter urges us to use the common law or "right to control" test to decide Klink's status. Slauter further says that summary judgment was improper under the common law standard, since he presented "some evidence" that Klink was an independent contractor. Unfortunately, however, Slauter's argument does not recognize the effect of a 1996 amendment to R.C. 4123.01. This amendment was effective on September 17, 1996, about three weeks before Slauter's accident, and added a new subsection to the statute. As amended, the statute now says that:
[a]s used in this chapter:
(A)(1) "Employee" means:
* * *
 (c) Every person who performs labor or provides services pursuant to a construction contract, as defined in section 4123.79 of the Revised Code, if at least ten of the following criteria apply:
 (i) The person is required to comply with instructions from the other contracting party regarding the manner or method of performing services;
 (ii) The person is required by the other contracting party to have particular training;
 (iii) The person's services are integrated into the regular functioning of the other contracting party;
 (iv) The person is required to perform the work personally;
 (v) The person is hired, supervised, or paid by the other contracting party;
 (vi) A continuing relationship exists between the person and the other contracting party that contemplates continuing or recurring work even if the work is not full time;
 (vii) The person's hours of work are established by the other contracting party;
 (viii) The person is required to devote full time to the business of the other contracting party;
 (ix) The person is required to perform the work on the premises of the other contracting party;
 (x) The person is required to follow the order of work set by the other contracting party;
 (xi) The person is required to make oral or written reports of progress to the other contracting party;
 (xii) The person is paid for services on a regular basis such as hourly, weekly, or monthly;
 (xiii) The person's expenses are paid for by the other contracting party;
 (xiv) The person's tools and materials are furnished by the other contracting party;
 (xv) The person is provided with the facilities used to perform services;
 (xvi) The person does not realize a profit or suffer a loss as a result of the services provided;
 (xvii) The person is not performing services for a number of employers at the same time;
 (xviii) The person does not make the same services available to the general public;
 (xix) The other contracting party has a right to discharge the person;
 (xx) The person has the right to end the relationship with the other contracting party without incurring liability pursuant to an employment contract or agreement.
R.C. 4123(A)(1)(c).
Significantly, the amended part of the statute does not use the phrase "in the service of." Further, based on our review of the case law, the amendment appears to be an attempt to codify the various factual matters courts have considered when deciding if an employee relationship, including the employer's "right to control," exists. See, e.g., Gillum,141 Ohio St. at 381-82, citing 1 Restatement of the Law, 220, p. 483;Bostic, 37 Ohio St.3d at 147; Harmon v. Schnurmacher (1992),84 Ohio App.3d 207; and Sub. H. Bill No. 245 (indicating that legislature's intent in amending 4123.01 was to "to redefine `employee' for purposes of the Workers' Compensation Law").
Moreover, while Slauter objects to reducing the test to a "mathematical formula," we think the legislature was trying to simplify a complex area. As has been noted by more than one court, the test of an independent contractor relationship is simply stated, but is not so easy to apply to the facts of different cases. See, e.g., Councell v.Douglas (1955), 163 Ohio St. 292, 296. Additionally, allowing summary judgment to be granted in such cases may have further complicated the problem. As was noted in Harmon,
 Bostic stands for the proposition that in the face of undisputed facts, summary judgment is appropriate, [but] it ignored the possibility that such "undisputed" facts may still be adversarial in nature, thus posing a genuine issue of material fact.
For example, in addition to the "right to control," some other indicia of the employment versus independent contractor relationship are (1) whether the one employed is engaged in a distinct occupation or business; (2) whether the work is done by a specialist, requiring a particular skill; (3) whether the worker or the employer supplies the place and requisite instrumentalities; (4) the length of time for which the person is employed; (5) the method of payment, whether by the time or by the job; and (6) whether the work is a part of the regular business of the employer. * * *
Thus, even where the proper conclusion is that there is no dispute or genuine issue of material fact as to the foregoing indicia, a trial court may inadvertently enter the pitfall of engaging in a weighing exercise while analyzing each separate factor on this question in drawing its conclusions of law. The propensity for a weighing analysis on the part of the trier of fact increases when factual elements submitted in a summary judgment exercise take on near fibers of adversarial or oppositional facts. We know of no authority which gives specific, bright-line rules to follow in carrying out this balancing process on this issue in a workers' compensation case. Therefore, such a weighing exercise may be a dangerous step toward exceeding the scope of summary judgment because it leaves room for the court to use wide discretion in construing the undisputed facts.
84 Ohio App.3d at 212. Apparently, the legislature took note of these concerns and established a "bright-line" rule that would avoid weighing exercises.
In view of the preceding analysis, we find that the legislature intended to redefine "employee" and to substitute a statutory test for the traditional common law standard. We also find that the legislative mandate in R.C. 4123.01(A)(1)(c) is unambiguous. As a result, we cannot restrict, qualify, narrow, or enlarge the statute. Instead, we must apply the statute without interpretation. See, e.g., State ex rel. CityIron Works, Inc. v. Indus. Comm. (1977), 52 Ohio St.2d 1, 4, and Wingatev. Hordge (1979), 60 Ohio St.2d 55, 58. Given these restrictions, the only conclusion we can reach is that the trial court correctly resorted to the statutory test in R.C. 4123.01(A)(1)(c). We do stress that the statute applies this test only to construction contracts, as defined in R.C. 4123.79. Consequently, the traditional common law test would still be used to evaluate employment relationships that fit within other parts of R.C. 4123.01(A)(1).
Slauter did not assign separate error to the trial court's actual application of the statutory test. However, he does mention in the first assignment of error that material issues of fact existed concerning at least ten of the twenty statutory criteria. Therefore, we will consider that issue as well.
Under R.C. 4123.01(A)(1)(c), persons who perform labor or provide services under construction contracts are "employees" if at they meet at least ten of the statutory criteria. Both sides agree that Klink's services were provided under a construction contract. As a result, the only question is whether Klink met at least ten criteria.
As a preliminary matter, we note that the facts were largely undisputed. Moreover, Slauter has not contested the trial court's decision on nine items, i.e, R.C. 4123.01(A)(1)(c)((iii), (iv), (vi), (vii), (x), (xii), (xvii), (xix), and (xx). Consequently, if the trial court was correct about at least one of the eleven remaining items, summary judgment was proper.
Slauter's discussion of the statutory factors can be divided into three main areas: 1) criteria which are not presently met because of alleged factual disputes [R.C. 4123.01(A)(1)(c)(i),(viii), (ix), (xiv), and (xviii)]; 2) criteria which Klink clearly did not meet [R.C.4123.01(A)(1)(c)(xiii), (xv), and (xvi)]; and 3) criteria which are said to be irrelevant because they can be applied either to independent contractors or to employees [R.C. 4123.01(A)(1)(c)(ii), (v), and (xi)].
No dispute exists concerning the second category, as the trial court agreed that Klink did not meet these criteria. For example, no one claimed that Klink was provided with the "facilities used to perform services." R.C. 4123.01(A)(1)(c)(xv). Specifically, Klink furnished the truck used to haul asphalt. She also realized a profit or loss on services, and was not paid by Barrett for her expenses [items (xiii) and (xvi)]. However, the absence of these factors is irrelevant, since the trial court did not rely on them when making its decision, i.e., the trial court found that Klink met seventeen of twenty criteria, not all twenty.
Concerning the first category, and taking the items in order, we note that R.C. 4123.01(A)(1)(c)(i) focuses on whether "[t]he person is required to comply with instructions from the other contracting party regarding the manner or method of performing services." Slauter contends that Klink did not meet this criterion because Barrett never told her how to haul asphalt; instead, Barrett only gave her general instructions about where to go and what to deliver. We disagree with this characterization of the evidence.
The undisputed facts indicate that Barrett told Klink when to report for work and when she could quit working for the day. Barrett also gave Klink mandatory rules for equipment and hauling. Klink's work routine went as follows. First, Klink's truck was loaded with asphalt at one of five Barrett Asphalt plants. Barrett told Klink which plant to report to in order to pick up the asphalt, and where to deliver the asphalt. When Klink arrived at the designated site, a Barrett job site foreman specified the paver in which the asphalt should be dumped. The foreman also told Klink when to stop her truck, and gave her the signal to dump. After dumping the asphalt, Klink returned to the Barrett asphalt plant to get another load, and continued this process until the Barrett job foreman told her to stop.
We cannot imagine what more would be involved in the method or manner of performing asphalt hauling services, besides these tasks. Furthermore, there are no factual disputes concerning this point. As a result, we find that the trial court correctly included R.C. 4123.01(A)(1)(c)(i) as a factor in favor of Klink's status as an employee.
Our conclusion about the first disputed criterion means that Slauter's remaining arguments are moot. Despite this fact, we will briefly comment on the third category of items. As we said, this group consists of criteria which are allegedly irrelevant because they could apply either to independent contractors or to employees. For example, under R.C. 4123.01(A)(1)(c)(ii), a person must be "required by the other contracting party to have particular training." In this context, Slauter concedes that Klink was required to have certain training for the job. Indeed, Klink's undisputed affidavit indicates that Barrett required her to have particular training, including a commercial driver's license, knowledge of safety procedures, work-related knowledge of how to use her dump truck, and knowledge of how to work a job site at a highway in conjunction with the construction crew. Nonetheless, Slauter says the training requirement is irrelevant because it could relate to independent contractors as well as to employees.
We disagree. First of all, we think the ability to require training is evidence of an employers "right to control." Obviously, both independent contractors and employees may need specialized skills to do certain jobs. However, retaining the right to require particular training as a condition of hire shows a degree of control and indicates that an employer is not simply interested in results. For example, inDoyle v. Mayfield (1988), 48 Ohio App.3d 113, a union sent one of its members to training sessions so that he could learn proper procedures for representing claimants at workers' compensation hearings. Id. at 115. Subsequently, the member was injured in the course of representing a claimant. Although the union argued that the member was an independent contractor, the court found he was a union employee. Among other things, the court relied on the training as evidence that the union controlled the manner in which the member conducted his job. Id.
Therefore, requiring particular training can be very relevant. It also need not be employer-offered training. Instead, as we said, the fact that certain training is required as a condition of hire shows an employer's retention of the right to control.Even more important, however, is the fact that the legislature chose to include training as a feature of the "employment" relationship. As we stressed earlier, we may not either modify or interpret an unambiguous statute. City IronWorks, 52 Ohio St.2d at 4, and Wingate, 60 Ohio St.2d at 58. Consequently, we are not at liberty to disregard a factor that the legislature has said is relevant.
As a final point, we note that Slauter relies heavily on a "rebuttable presumption" which allegedly arises when parties have a written agreement describing their employment relationship. According to Slauter, such a presumption arose in the present case because Barrett and Klink signed a purchase order stating that Klink was an independent contractor.
As support for the use of a rebuttable presumption, Slauter citesMcDonald v. Canton Free Press (Mar. 3, 1997), Stark App. No. 1996 CA 00286, unreported. In McDonald, the Fifth District Court of Appeals held that a contract was "primary evidence" of the parties' employment relationship. Id. at p. 3. Factually, the parties had agreed in writing that a newspaper carrier was not an employee. They had also agreed to other contract terms that would normally describe an independent contractor relationship. Id. at 2-3. Ultimately, the Fifth District found that the carrier was not an employee. In particular, the court said that "the evidence contra was not sufficient to rebut the presumption of the parties' contractual relationship." Id.
By way of contrast, we have found authority indicating that contractual labels are not controlling and that courts must look to the substance of the relationship. Walker v. Lahoski (July 28, 1999), Summit App. No. 19293, unreported, p. 2. In Walker, the parties also had signed an agreement in which one party acknowledged that she was an independent contractor. Id. Despite this fact, the Ninth District found disputed facts and various indica of an employee relationship. As a result, the trial court's summary judgment decision was reversed, and the case was remanded for further consideration. Id. at 4.
Whether these approaches are consistent or can be reconciled is irrelevant for purposes of the present case. Significantly, the legislature did not focus in R.C. 4123.01(A)(1)(c) on how parties contractually describe their relationship. In fact, the only reference to a contract appears in R.C. 4123.01(A)(1)(c)(xx), which deals with whether "[t]he person has the right to end the relationship with the other contracting party without incurring liability pursuant to an employment contract or agreement." As we previously emphasized, the statute controls. For this reason, "rebuttable presumptions," which may or may not arise under the common law, have no bearing.
Based on the preceding discussion, we find that the trial court properly used the statutory test in amended R.C. 4123.01(A)(1)(c) instead of the pre-existing common law standard. Further, the trial court correctly found that Klink was immune from suit, as Klink met at least the minimum criteria required for employee status under R.C. 4123.01( A)(1)(c). Accordingly, the first assignment of error is overruled.
 II
As we mentioned earlier, the second assignment of error is based on application of the common law, or "right to control" test. In this regard, Slauter claims that issues of material fact exist when the common law test is applied. Since we have rejected use of the common law test, the second assignment of error is without merit and is also overruled.
In light of the preceding discussion, both assignments of error are overruled and the judgment of the trial court is affirmed.
 __________________________ BROGAN, J.
FAIN, J., and KERNS, J., concur.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District Sitting By Assignment of the Chief Justice of the Supreme Court of Ohio).