OPINION
{¶ 1} Plaintiff-appellant Anthony Johnson appeals from the June 13, 2005, Judgment Entry of the Stark County Court of Common Pleas holding that plaintiff-appellant was an independent contractor and not an employee of defendant-appellee Louisville Auto Body and, therefore, was not entitled to participate in the workers' compensation fund.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 6, 2003, appellant Anthony Johnson was injured while working as a mechanic at appellee Louisville Auto Body. Appellant filed a claim with the Bureau of Workers' Compensation. On March 11, 2004, his claim was allowed for fracture phalanx left thumb and open wound of left thumb.
 {¶ 3} Appellee Louisville Auto Body then appealed from such decision. Following a hearing held on September 29, 2004, a District Hearing Officer vacated the March 11, 2004, order and denied appellant's claim. The District Hearing Officer, in her decision, found that appellant was not an employee of Louisville Auto Body, but rather was an independent contractor and, therefore, was not entitled to receive workers' compensation benefits. Appellant then appealed. Both a Staff Hearing Officer and the Industrial Commission of Ohio affirmed such decision.
 {¶ 4} Thereafter, on January 19, 2005, appellant filed a complaint against appellees Louisville Auto Body and James Conrad, as Administrator of the Bureau of Workers' Compensation, seeking the right to participate in the workers' compensation fund. A bench trial was held on May 31, 2005, to determine whether appellant was an independent contractor or an employee of appellee Louisville Auto Body. The following testimony was adduced at trial.
 {¶ 5} At trial, appellant testified that, in August of 2003, he saw a newspaper ad placed by appellee Louisville Auto Body seeking an auto mechanic. After seeing the ad, appellant went to appellee Louisville Auto Body and filled out an employment application. When asked, appellant testified that he never signed any type of independent contractor agreement.
 {¶ 6} Appellant further testified that he had his own set of hand tools and that it was common for auto mechanics to have their own set "if [they] want to be employed in that field." Transcript at 23. During his subsequent interview with William Daniel Blackburn, the owner of appellee Louisville Auto Body, appellant was told that he would be paid on a flat rate system. When asked to explain a flat rate system, appellant testified as follows:
 {¶ 7} "A. A flat rate system is we have what they call a book time, it's a standardization in the industry, if a job called for a 1.2 hours for a particular — example is a front brake job. The vehicle came in, I would be paid 1.5 hours for that job whether it took me one hour or three hours." Transcript at 26-27. According to appellant, no discussions were had about appellant being an independent contractor. Appellant further testified that it was agreed that he would be paid $11.00 an hour flat rate. Appellant was not paid any overtime.
 {¶ 8} Appellant testified that, during his interview, Blackburn told him that he expected appellant to be at the shop at around 8:30 a.m. until past 5:00 p.m. on Mondays through Fridays. Appellant, who did not punch a time clock, testified that if he wanted to leave during those hours, he would ask Blackburn "if we had anything coming in or if it was okay to leave." Transcript at 29. According to appellant, Blackburn supplied a lift, a brake lath, a diagnostics scanner as well as other equipment. The following testimony was adduced when appellant was asked about how work was assigned to him:
 {¶ 9} "Well, when we got to work that morning, if what was there, Dan would say, I need this done, he went out and picked the cars up. If there was two or three different jobs, there was myself and another technician, Dave, he would give — tell us what was out there. Together the two of us could go out, grab a job, bring it in. Usually if there was a heavier job, Dave knew that that was his. If it was more or less a driveability problem, I knew that was mine, there was no need to say." Transcript at 32. Appellant testified that the customer's who came into the shop were Blackburn's customers and that he was paid the same way even if he brought the customer into the shop himself.
 {¶ 10} Appellant also testified that Blackburn decided whether or not appellant would speak to any customers over the telephone if there was a problem with a car. When asked whether he could turn down jobs, appellant responded in the negative.
 {¶ 11} On cross-examination, appellant testified that he had been employed six or seven other places prior to working at appellee Louisville Auto Body and that at each of those jobs he received a W-2 form from his employer for his earnings and was required to punch a time clock. Appellant also admitted that, at his other jobs, he received some type of benefits, whether vacation or health insurance. Appellant testified that he received a 1099 form from appellee Louisville Body Shop and that there were no taxes taken out his earnings. When asked whether he ever questioned Blackburn after receiving his first check about why no taxes were taken out, appellant responded "No." Transcript at 44.
 {¶ 12} Appellant admitted, on cross-examination, that while he received benefits from his previous employers, he received no benefits from appellee Louisville Auto Body. The following testimony was adduced on cross-examination when appellant was asked whether he ever turned a job down:
 {¶ 13} "I recall us turning one job down that I remember in my time there, and it was a job on a Northstar engine. And Dave Cavelli and myself looked at the job and denied the fact that neither one of us would want to do the job. That was the only time I can recall ever turning down a job there.
 {¶ 14} "Q. Did Dan [Blackburn] discipline you, suspend you?
 {¶ 15} "A. No, neither one of us." Transcript at 58.
 {¶ 16} According to appellant, Blackburn supervised him by letting him know what jobs needed to be done that day and how long they would take, but did not tell appellant how to perform the work. When asked whether Blackburn assigned a particular vehicle to him or to Dave, another automotive technician, appellant responded that approximately 50% of the time, he did not need to be told what to do and knew which jobs were his. While approximately 70% of the time, if a job involved "driveability", appellant would take it, if it involved "heavy" work, Dave would take it. Appellant further testified that Blackburn would sometimes order parts for jobs as appellant needed them and then would bill the customer for the parts. At other times, appellant ordered the parts himself.
 {¶ 17} On redirect, appellant testified that Blackburn charged his customers $55.00 an hour for appellant's time while paying appellant $11.00 an hour. According to appellant, there were preferred vendors that Blackburn wanted appellant to use for parts.
 {¶ 18} William Daniel Blackburn, who had owned appellee Louisville Auto Body for eight years, testified at the bench trial that it was a sole proprietorship. Blackburn testified that he had two technicians who were subcontractors for mechanical work. Blackburn testified that, during his interview with appellant, he told appellant that there was no insurance, no workers' compensation and no vacation. According to Blackburn, appellant, when asked whether he wanted to be an employee or an independent contractor, indicated that "he'd finish out the year as a contractor." Transcript at 98.
 {¶ 19} Blackburn further testified that he told appellant that he would be paid on a flat rate basis at the rate of $11.00 an hour and that appellant picked and chose the jobs that he wanted. According to Blackburn, appellant could come and go as he pleased and was never told that he had to be at the body shop at a specified time or stay until a specified time. When Blackburn was asked whether he ever told appellant that appellant was required to be there on any particular day of the week, Blackburn responded in the negative. Blackburn also testified that the automotive technicians chose the jobs between themselves and that he did not assign the jobs to them.
 {¶ 20} At the bench trial, Blackburn testified that appellant turned down jobs and was not disciplined for doing so since "[h]e could do what he wanted to, he could pick and choose his work." Transcript at 105. Blackburn stated that he did not supervise appellant or tell appellant how to go about doing a job and that he sometimes would order parts for appellant to save appellant time. He further testified that he told appellant from the beginning that no taxes would be taken out of appellant's pay checks and that appellant would not receive any insurance. When asked why he had appellant fill out an employment application, Blackburn testified that it was because he "was getting information and I was going to try to get them . . . some health insurance and stuff in there. But that deal fell through so I figured just let it run like it is." Transcript at 114. Blackburn testified that he had never paid premiums to the Bureau of Workers' Compensation for anyone who worked for him before.
 {¶ 21} On cross-examination, Blackburn admitted that there was no written documentation explaining Blackburn's belief that appellant was an independent contractor other that the 1099 form appellant was given. Blackburn further admitted that when appellant first came to him, he did not tell appellant that he required appellant to have his own workers' compensation insurance.
 {¶ 22} At the conclusion of the bench trial, the trial court stated on record that, based upon the testimony, he found appellant to be an independent contractor rather than an employee. The trial court, in so ruling, stated in relevant part as follows:
 {¶ 23} "In this case the Plaintiff, Mr. Johnson, controlled a great deal of what he did. He had the ability to, in part, select what work he was going to do. He would do more the driveability work rather than the heavy work because there was already Dan there — or Dave, excuse me, who was doing that work.
 {¶ 24} "But he did testify that on occasion they would agree between themselves, not with Mr. — not with Dan. They would agree between themselves as to who would do the work. . . .
 {¶ 25} "Let's look at some of the issues. The hours. I heard the testimony that one of the reasons of I believe one of the reasons that Mr. Johnson would remain there throughout the day so that if a job would come in that wasn't previously scheduled that he wouldn't miss that job, that he would be available to do that job.
 {¶ 26} "In the automotive repair business, we heard today, and with no dispute, that the technician, Mr. Johnson, would in turn tell the proprietor that he needed certain parts and those parts would be ordered. The fact that he didn't participate in the profit from the parts sale is immaterial at all because Louisville Auto Body Service provided the facility in which the workers would perform their work. It provided the facility the utilities, and the necessary equipment to work.
 {¶ 27} "Mr. Johnson provided his tools which are standard for technicians in automotive work. I've seen them bring in these huge roll-a-way trays with their tools and many tiers and usually have quite a bit of money tied up in those tools.
 {¶ 28} "I didn't hear the supervision aspect of this that that would create an employer/employee relationship.
 {¶ 29} "It was pretty clear that Mr. Johnson would know what to do, did what he needed to do, told Dan what parts needed to be ordered, and installed the parts. The work was then billed out by the proprietor.
 {¶ 30} "I think that under the Bostic case that Mr. Johnson was, in fact, an independent contractor, and I'll so rule." Transcript at 151-154. The trial court further found that, for such reason, appellant was not certified to participate in the workers' compensation system. The trial court's decision was memorialized in a Judgment Entry filed on June 13, 2005.
 {¶ 31} Appellant now raises the following assignment of error on appeal:
 {¶ 32} "THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT ANTHONY JOHNSON WAS AN INDEPENDENT CONTRACTOR AND THUS NOT ENTITLED TO PARTICIPATE IN OHIO WORKERS' COMPENSATION SYSTEM."
 I {¶ 33} Appellant, in his sole assignment of error, argues that the trial court erred in holding that appellant was an independent contractor and thus not entitled to participate in the workers' compensation system. We disagree.
 {¶ 34} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 35} At issue in the case sub judice is whether or not there was competent and credible evidence that appellant was an independent contractor. "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact. The key factual determination is who had the right to control the manner or means of doing the work." Bosticv. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph one of the syllabus; Gillum v. Indus. Comm. (1943),141 Ohio St. 373, 48 N.E.2d 234.
 {¶ 36} In Gillum, supra, the Ohio Supreme Court set forth the following test in paragraph two of the syllabus:
 {¶ 37} "Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created."
 {¶ 38} The factors to be considered in determining who has the right of control include, but are not limited to: "such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." Bostic, supra,37 Ohio St.3d at 146.
 {¶ 39} In the case sub judice, we find that the trial court did not err in holding that appellant was an independent contractor rather than an employee since there was competent, credible evidence supporting the trial court's decision. As is stated above, testimony was adduced at trial that appellant was paid a flat rate rather than on an hourly basis and that, when he was hired, appellant was told that he would not receive any insurance, or a vacation and would not be carried by workers' compensation. There was also testimony that appellant set his own hours, provided his own hand tools and could come and go as he pleased and, in short, had control over the manner or means of his work. Appellant was free to leave when there was no work for him to do at the shop and could pick and choose the jobs he worked on. Appellant himself testified at the bench trial that he turned down at least one job and that he and the other technician decided between themselves who would take which job. In contrast to his previous jobs, appellant did not punch a time clock and received a 1099 rather than a W-2.
 {¶ 40} Moreover, testimony was adduced at trial that William Daniel Blackburn, the owner of the body shop, did not tell appellant how to perform the work that appellant performed and that appellant was only responsible to Blackburn for the end result. There also was evidence that appellant decided what parts were required for the jobs that he worked on. Appellant testified that he frequently ordered the parts himself or had them ordered.
 {¶ 41} Finally, the evidence adduced at trial established that appellant was a short term employee. Appellant started working at the body shop in October of 2003 and was injured on November 6, 2003, approximately three weeks later. Appellant left his job permanently in April of 2004.
 {¶ 42} In short, based upon our review of the record, we find that there was sufficient competent, credible evidence presented from which the trial court could have reasonably concluded that appellant was an independent contractor. The trial court's decision, therefore, was not against the manifest weight of the evidence.
 {¶ 43} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 44} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Farmer, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.