{¶ 26} The directed verdict standard is difficult to meet, and when I construe the evidence as to Mr. Clark's earnings most strongly in favor of the non-movant, Mr. Dolence, I concur with the majority decision.
 {¶ 27} Two conclusions are possible from the wage evidence. *Page 8 
 {¶ 28} The first conclusion is that Mr. Clark exceeded the $160 per quarter threshold because Mr. Clark was paid at a rate of $7 per hour for three hours per day equaling $21 per day. If Mr. Clark worked three days per month he clearly would have earned in excess of the threshold amount.
 {¶ 29} The second conclusion is that Mr. Clark worked only two times per month. If that is so, Mr. Clark's quarterly wages would not have met the threshold amount.
 {¶ 30} Mr. Dolence testified at trial that Mr. Clark worked one or two times per month. However, upon cross-examination Mr. Clark's counsel attempted to impeach that testimony through the use of Mr. Dolence's deposition testimony that Mr. Clark worked three times per month.
 {¶ 31} Faced with two competing conclusions dependent upon a credibility determination, the trial court should have allowed the jury to decide the wage threshold issue.
 {¶ 32} However, I disagree with the majority that there is a genuine issue of fact for the jury regarding whether or not Mr. Clark was "in service." Applying the same directed verdict standard to the evidence before the court, the trial court was correct in directing a verdict for Mr. Clark on this issue.
 {¶ 33} On a regular basis for a year Mr. Clark performed the work of a household worker, cleaning floors, doing dishes, taking out the trash, occasionally vacuuming, and doing outside yard work. The unrebutted evidence adduced during the trial was that Mr. Dolence controlled the manner and means of Mr. Clark's work. On the day of the accident Mr. Dolence told Mr. Clark what work was to be performed, directed him to use *Page 9 
the flammables, and instructed him to collect the branches, break them up and put them into the fire pit.
 {¶ 34} The basic test for distinguishing an independent contractor from an employee is set forth in Gillum v. Indus. Comm., (1943), 141 Ohio St. 373, paragraph two of the syllabus:
 {¶ 35} "Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created."
 {¶ 36} The manner and means of doing the work for Mr. Dolence was not left to Mr. Clark to decide. Thus, reasonable minds could come to only one conclusion — Mr. Clark was "in service" and not an independent contractor or a buddy helping another buddy down on his luck. The fact that the two men would sometimes watch television, drink beer, and play cards together after Mr. Clark had performed his job duties does not transform the relationship into something other than an employer-employee relationship. If that were the case then accompanying the boss to an after-hours cocktail party would transform many a master-servant relationship. *Page 1