**KOPPERS COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**GARLING & LANGLOIS et al. and Lawyers' Title Insurance Corporation,**
**Defendant-Appellee.**

No. 76–2606.

United States Court of Appeals, Sixth Circuit.

Argued June 23, 1978.

Decided March 21, 1979.

John P. Williams, Butzel, Long, Gust, Klein & Van Zile, Donald B. Miller, Detroit, Mich., for plaintiff-appellant.

Steven J. Fishman, Hammond, Ziegelman, Sotiroff & Fishman, Malcolm D. Brown, Detroit, Mich., for defendant-appellee.

Before MERRITT, Circuit Judge, and CECIL and PECK, Senior Circuit Judges.

MERRITT, Circuit Judge.

The plaintiff furnished labor and materials in the construction of a Michigan apartment complex. The project is now in default, and numerous subcontractors, including plaintiff, have not been paid for their work. The actors in the case are the owner of the project, Garling & Langlois; the construction lender, Graham Mortgage Company; the general contractor, Mega Construction Company; the disbursing agent of the construction loan proceeds, Lawyers Title Insurance Corporation, who is the defendant; and the subcontractor, Koppers Company, Inc., the plaintiff. The subcontractor has sued the disbursing agent on state law claims for damages for misapplication of construction loan proceeds. The District Court entered summary judgment in favor of the disbursing agent on all claims. We affirm.

I.

The transaction giving rise to the dispute between Koppers and Lawyers was arranged as follows: Graham, the lender, agreed to advance approximately $2,265,000 to G & L, the owner, who agreed to use the funds to construct a multifamily luxury apartment complex, known to the parties as Plaza South Phase II. As security for the loan, the owner granted the lender a mortgage on the property and improvements to be constructed. The mortgage was insured by the Secretary of the United States Department of Housing and Urban Development under the National Housing Act, 12 U.S.C. §§ 1701 et seq. (1976). Under the terms of the building loan agreement and mortgage executed between the lender and the owner, the proceeds of the loan were to be advanced in installments as the construction progressed, less 10% "holdback." To that end, the lender separately engaged Lawyers Title Insurance Corporation, which had insured the lender's mortgage as a first lien against the property, to police the loan fund disbursements to the owner. The owner contracted separately with Mega Construction Company for Mega to serve as general contractor for the project; and the general contractor, in turn, entered into various subcontracts, including the one with Koppers, for materials and labor.

When the project went into default in the Fall of 1971, Koppers Company had not been paid for the approximately $46,000 worth of materials and labor it had supplied the project under its contract with the general contractor. On October 7, 1971, Koppers filed a lien for that amount against the Plaza South property under Michigan's mechanic's lien statute, Mich.Comp.Laws Ann. § 570.1 (1967). A few months later, in February 1972, Koppers brought suit in the Circuit Court of Wayne County, Michigan, for a determination of the rights and priorities of the various lien claimants in the property and for foreclosure of its own mechanic's lien. The United States Department of Housing and Urban Development, which had taken an assignment of the Graham mortgage pursuant to its mortgage insurance obligations, was one of the defendants in Koppers' mechanic's lien foreclosure suit, and, on petition of the United States, the action was removed to the United States District Court for the Eastern District of Michigan. Once in federal court, Koppers filed an amended complaint, containing five separate counts. The first count merely restated the removed mechanic's lien foreclosure suit against the Secretary of HUD and the other lienholders, but the remaining counts stated new claims against various other parties.

The third count of the amended complaint—the claim with which we are here concerned—charged that Lawyers, the disbursing agent, had participated with the owner, G & L, in a fraudulent diversion of the construction loan proceeds to pay off the owner's indebtedness on another, similar construction project. The claim sought damages from Lawyers for violation of a duty the disbursing agent assertedly owed all subcontractors on the Plaza South Phase II project, including Koppers, to see that the loan proceeds were properly applied to construction of the project and payment of those supplying labor and materials.

Lawyers answered by denying generally any wrongdoing, but the thrust of its motion for summary judgment on this count was that, as disbursing agent for the project lender, its sole duty was to the lender and that it owed no duty, and therefore could not be held for a breach of any duty, to Koppers or any other subcontractor. Koppers, on the other hand, argued that the disbursing agent's duty to the subcontractors arose from several distinct sources of Michigan law.

The District Court rejected all of Koppers' theories of recovery, and granted the motion for summary judgment. Koppers appeals that ruling, entered pursuant to Fed.R.Civ.P. 54(b) as a final judgment eligible for immediate review under 28 U.S.C. § 1291 (1976), and urges upon us the same arguments, founded wholly upon state law, that it sought to persuade the District Court warranted a trial of its claim for damages against the disbursing agent.[1]

## II.

We think the District Court properly granted summary judgment. None of the

---

1. We note in passing that the only conceivable basis of federal jurisdiction over Koppers' claim against Lawyers lies in the doctrine of "pendent party" jurisdiction. Although the claim, viewed in isolation, is between parties of diverse citizenship and involves more than $10,000, it is joined in a single lawsuit with another claim against a party who may not be sued in diversity, the United States. *United States v. Dry Dock Savings Inst.*, 149 F.2d 917, 918 (2d Cir. 1945); *Darling v. United States*, 352 F.Supp. 565, 567 (E.D.Cal.1972). The requirement of complete diversity is therefore violated. *Strawbridge v. Curtiss*, 7 U.S. 267, 3 Cranch 267 (1806). We nevertheless think that jurisdiction was properly asserted over this claim, as pendent to the claim against the United States, because the claim against Lawyers independently satisfies the requirements of the diversity statute. Compare the pendent party claim dismissed on jurisdictional grounds in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). A jurisdictional dismissal would accomplish nothing, since Koppers could simply resubmit the claim against Lawyers in a separate complaint and there would be no option for the District Court but to take jurisdiction over it on diversity grounds. Similarly, if Koppers chose after a jurisdictional dismissal to renew the claim in state court, Lawyers would have the right under 28 U.S.C. § 1441(a) (1976) to remove the case to federal court.

legal theories urged by Koppers in the District Court supported the claim for damages against the disbursing agent. We consider each in turn.

A. Koppers' first claim is that all of the subcontractors to the Plaza South Phase II project were creditor third party beneficiaries of the building loan agreement executed between Graham, the lender, and G & L, the owner of the project. The essence of the agreement was that the lender promised to advance a sum of money to the owner, in return for the owner's promise to apply the money to the construction of the improvements which were to secure the loan. Koppers concedes that it was not a third party beneficiary of the lender's covenant to make the owner a construction loan.[2] The claim is rather that Koppers and the other subcontractors were third party beneficiaries of the owner's reciprocal covenant to use the proceeds of the loan to pay for the construction of the project.

■ The short answer to this claim is that Lawyers was not a party to the agreement between the lender and the owner and thus may not be sued by a third party beneficiary for its breach. A third party beneficiary of a promise stands in the shoes of the promisee and is afforded the right under the common law and Mich.Comp. Laws Ann. § 600.1405 (1967) to enforce the promise against the promisor. Here, the owner made the promise upon which Koppers seeks to rely. Thus, even assuming Koppers does qualify as a creditor third party beneficiary of that promise, that status would entitle Koppers to bring suit on the promise only against the owner, not against Lawyers, who was not a party to the promise made by the owner but was merely acting under a separate agreement as disbursing agent for the promisee, the lender.

B. Koppers' second theory of recovery also invokes third party beneficiary principles. It is that all of the subcontractors were creditor third party beneficiaries of the contract between the lender and Lawyers, under which Lawyers agreed to serve as the lender's agent for the disbursement of the construction loan proceeds to the project owner. By participating in the owner's diversion of the loan proceeds from the purposes prescribed by the construction loan agreement and other building documents, the disbursing agent, it is argued, breached its agreement with the lender and should be answerable in damages to the third party beneficiaries of the disbursing agreement. This theory fails for several reasons.

■ First, the nature of the relationship between the lender and Lawyers under the disbursing agreement, as revealed by the extensive discovery had by Koppers in this case, was one of principal and agent. That is, Lawyers agreed merely to act as the lender's agent for the performance of the lender's promise to the owner to make the construction loan. Under long-settled principles of contract law, agency agreements do not create any rights in third parties, even a party as to whom the principal owes some performance and for whose benefit the principal has retained an agent to render it.[3]

■ Furthermore, as we have already noted, Koppers has conceded that it cannot be deemed a third party beneficiary of the lender's promise to the owner to make the construction loan. That being the case, we fail to see how Koppers can claim any greater right under the disbursing arrangement between Lawyers and the lender, which merely bound Lawyers to perform the lender's promise to the owner.

More fundamentally, in order to qualify as a creditor beneficiary of Lawyers' promise to disburse the loan fund for the lender, Koppers was required at the very least to show that Lawyers' performance of that promise discharged some obligation or duty the lender (the promisee) owed to Koppers.[4]

---

**2.** Restatement of Contracts § 133, Comment 1(b), Illustration 9.

**3.** 4 A. Corbin, Contracts § 779E (1951).

**4.** 4 A. Corbin, Contracts § 787 (1951).

This Koppers could not do, for the lender's sole obligation was to G & L, the owner. The lender had no relationship, contractual or otherwise, with the subcontractors, who became involved in the project through their contracts with the general contractor.

■ C. Both of Koppers' trust theories are likewise without merit. The first of these relies upon a provision in the construction loan agreements between the lender and the owner in which the owner covenanted "to hold in trust each advance [of loan proceeds] for application to the items for which such advance was requested and approved." Koppers argues that all subcontractors performing work on the project were beneficiaries of that trust entitled to sue the disbursing agent for its alleged complicity in the owner's breach of the trust. We agree with the District Court that the subcontractors were merely incidental beneficiaries of the express trust created by the loan documents and as such have no rights under the trust.

Certainly, the language creating the trust does not designate the subcontractors as beneficiaries. The trust covenant was extracted from the owner by the lender as part of the consideration for the lender's promise to make the loan. The manifest purpose of the provision was to provide additional protection for the lender's investment against precisely the contingency that has occurred—default. Against this background, the most plausible interpretation of the covenant is that the lender, the party at greater risk in the transaction and the one responsible for inserting the provision in the agreements, was its sole intended beneficiary.

■ It is true, as Koppers points out, that the subcontractors were more likely to get paid and thereby stood to benefit if the owner faithfully performed the trust. But that is not the test for determining who are the beneficiaries of an express trust. The intent of the party imposing the trust controls,[5] and we think it would unduly distort the lender's intentions to conclude that the trust provision was inserted in the loan documents to accomplish anything more than to supplement the lender's contract remedies against the owner in the event of default with an additional remedy for breach of fiduciary duty.

■ Koppers' other trust theory rests upon the Michigan Builders Trust Fund Act, Mich.Comp.Laws Ann. §§ 570.151–52 (1967), which, Koppers argues, imposed a statutory trust on the loan fund in the hands of the owner, G & L, and gave the subcontractors a cause of action against the disbursing agent for its role in G & L's breach of the statutory trust. The argument fails because its premise regarding the application of the Trust Fund Act is flawed.

The Act provides in pertinent part:

In the building construction industry the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this Act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors, or materialmen, and the contractor shall be considered the trustee of all funds so paid to him for building construction purposes.

As the District Court correctly determined, the language of the Act simply will not bear the reading Koppers seeks to give it. The statute imposes a trust over construction funds in the hands of a "contractor." G & L was *not* a "contractor" on the Plaza South project, but rather was its owner. The construction loan proceeds did not become subject to the statutory trust until they came into the hands of Mega Construction Company, the general contractor on the project.

■ Nor are we persuaded by Koppers that we should ignore the plain language of the Act in order to give effect to its "purpose," for the purpose of the Act is not, as Koppers argues, simply to insure that subcontractors get their money. As we have

---

5. Restatement (Second) of Trusts § 127 (1959).

only recently had occasion to observe,[6] the Act was designed to protect both subcontractors *and owners* from financially irresponsible general contractors by creating an alternative to the mechanic's lien laws, which were deemed by the legislature to provide inadequate protection to subcontractors while at the same time unfairly encumbering owners' property. The statute simply does not address the problem that allegedly resulted in the failure to pay the subcontractors on this project—malfeasance by the owner before the loan proceeds were ever paid over to a "contractor."

 D. Finally, Koppers urges that, if none of its other theories sustains the claim against Lawyers, we should impose, as a matter of public policy, a duty upon construction lenders and their disbursing agents to see that subcontractors are paid for their work and that we should find a right in Koppers to sue Lawyers for breach of the duty. We must decline to do so. As a federal court, we are bound to apply Michigan statutory and decisional law as we find it. Absent some relatively clear direction from those sources, we are not free to expound our notions of what ought to be the policy of Michigan courts toward claims such as this one. Koppers has not cited us to any Michigan decision, and we have found none, tending to support the imposition of such a duty running to subcontractors. The legislature has not gone so far either, providing what it apparently considers adequate protection for subcontractors in the statutory lien laws and the Builders Trust Fund Act. We also note that there is strong authority in other jurisdictions against making construction lenders (and, we suppose, their disbursing agents) the absolute insurors of subcontractors' risks.[7]

All of this is not to say that we think a construction lender or disbursing agent, having engaged in conduct of the sort alleged in this case, could not ever be held accountable by injured subcontractors under Michigan law. For example, if subcontractors were enticed into performing work on a project by false assurances of the project's financial integrity, an action might lie in tort on their behalf against those responsible for the misrepresentations. Or, in some circumstances, a willful diversion of loan fund proceeds to the detriment of subcontractors might constitute the tort of intentional interference with contractual relations. Other common law theories of recovery might exist. However, Koppers did not plead any of these other theories, did not seek to develop any of them in the District Court, and has not argued any of them before this Court.

Finding the theories Koppers has raised and argued to be without merit, we affirm the order of the District Court granting summary judgment.

---

6. *Selby v. Ford Motor Co.*, 590 F.2d 642 at 647 (6th Cir. 1978).

7. *See, e. g., Mortgage Associates, Inc. v. Monona Shores, Inc.*, 47 Wis.2d 171, 177 N.W.2d 340, 349–50 (1970); *First Nat'l State Bank of N.J. v.*

*Carlyle House, Inc.*, 102 N.J.Super. 300, 246 A.2d 22, 29–34 (1968), *aff'd*, 107 N.J.Super. 389, 258 A.2d 545 (1969). *See also Lefcoe & Schaffer, Construction Lending and the Equitable Lien*, 40 S.Cal.L.Rev. 439, 447–49 (1967).