DECISION AND JOURNAL ENTRY
Appellant, Green Local School District Board of Education ("school board"), appeals from a judgment of the Summit County Court of Common Pleas that confirmed an arbitration decision and awarded damages to the Ohio Association of Public School Employees Local 274 ("OAPSE"). This Court reverses.
During the summer of 1996, the school board contracted with Building Care, Inc. ("Building Care") to provide custodial services at its new high school, a newly-constructed facility that was scheduled to open the following fall. In response to the school board's action, OAPSE filed a grievance, contending that the school board had breached its collective bargaining agreement with OAPSE by failing to hire union employees to do the custodial work at the high school.[1] Specifically, OAPSE alleged that the school board had breached the agreement's provision that recognized OAPSE as the exclusive bargaining representative of all custodial employees and the provision in which the school board agreed to post available job openings and to give union and seniority preference in filling those positions.
The school board denied OAPSE's grievance, contending, among other things, that the above provisions of the collective bargaining agreement did not even apply to this situation because the school board had not hired any employees, nor were there any jobs at issue. The school board had contracted with a private entity, which would use its own cleaning equipment, supplies, and manpower to clean the new high school.
The school board further relied on the management rights provision of the collective bargaining agreement, which reserved to the school board broad management power over its facilities and working force "except as otherwise expressly limited in this agreement[.]" According to the school board, there was nothing in the agreement to expressly limit its right to subcontract custodial services.
Pursuant to the collective bargaining agreement, this dispute was heard by an arbitrator. The arbitrator determined that the school board had breached the collective bargaining agreement by contracting with Building Care to do the high school custodial work. The arbitrator decided that the school board should cease and desist the use of Building Care and instead employ OAPSE members as custodians at the high school.
Apparently, Building Care continued performing custodial services at the high school. On April 25, 1997, the school board filed a complaint in the common pleas court to vacate the arbitrator's decision and award. OAPSE also filed a complaint three days later, seeking to confirm and enforce the arbitrator's decision and award. OAPSE also sought an award of damages. The two cases were later consolidated.
Following a hearing on the parties' briefs, the trial court denied the school board's motion to vacate the arbitrator's decision and award and granted OAPSE's motion to confirm and enforce it.[2] On stipulated evidence, the trial court later awarded $5,957.50 in damages, which represented the union dues or fair share fees that the union had lost because the school board did not employ union custodians at the high school. The trial court denied OAPSE's request for prejudgment interest.
The school board appeals and raises two assignments of error that will be consolidated. The school board contends that the trial court erred in failing to vacate the arbitrator's award and by awarding damages to OAPSE. OAPSE cross-appeals, challenging the trial court's failure to award prejudgment interest on the damage award.
The Ohio Supreme Court has held that a public employer may subcontract work that might also be performed by bargaining unit employees "so long as such practice is not violative of either the affected employees' collective bargaining agreement or R.C. Chapter 4117." Local 4501,Communications Workers of America v. Ohio State Univ. (1986),24 Ohio St.3d 191, 196. The sole dispute here is whether the school board's arrangement with Building Care violated the collective bargaining agreement with OAPSE. The arbitrator and the trial court found that the school board did breach the agreement. This Court disagrees.
A reviewing court's inquiry for purposes of vacating an arbitration decision and award is limited to determining whether the arbitrator's award "draws its essence from the collective bargaining agreement and is not unlawful, arbitrary, or capricious[.]" Findlay City School Dist.Bd. of Edn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, paragraph two of the syllabus, superceded on other grounds by R.C. 4117.10(A). When the arbitrator's award conflicts with the express terms of the collective bargaining agreement, it departs from its essence. Ohio Officeof Collective Bargaining v. Ohio Civil Service Employees Assn., Local 11
(1991), 59 Ohio St.3d 177, syllabus. When the arbitrator departs from the language of the agreement, "`courts have no choice but to refuse enforcement of the award.'" Id. at 180, quoting United Steelworkers ofAmerica v. Enterprise Wheel Car Corp. (1960), 363 U.S. 593, 597.
Although the arbitrator may interpret ambiguous language in a collective bargaining agreement, "`he is without authority to modify plain and unambiguous provisions.'" Ohio Office of Collective Bargainingv. Ohio Civil Service Employees Assn., Local 11, supra, at 180, quotingDetroit Coil Co. v. Internatl. Assn. of Machinists Aerospace Workers,Lodge No. 82 (C.A.6, 1979), 594 F.2d 1094. The collective bargaining agreement between the school board and OAPSE expressly provided that "[t]he arbitrator shall not have the authority to add to, subtract from, modify, change or alter any of the provisions of this agreement, nor add to, detract from or modify the language therein arriving at his decision[.]"
Three provisions of the collective bargaining agreement are at issue here. The school board relied on the broad management rights clause, contained in Section 1.3 of the agreement:
 The Union recognizes that except as otherwise expressly limited in this agreement, the Board has a sole and an exclusive right to manage its operation and facilities and to direct the working force. The right to manage includes, but is not limited to, the authority of the Board, and its sole and exclusive discretion and judgement, to:
 a. determine matters of inherent managerial policy which govern: the function and programs of the school district; standards of service; its overall budget; utilization of technology; and its organizational structure;
b. direct, supervise, evaluate, or hire employees;
 c. maintain and improve the efficiency and effectiveness of its governmental operations;
 d. determine the overall methods, process, means, or personnel by which governmental operations are to be conducted;
 e. suspend, discipline, demote, or discharge for just cause; or layoff, transfer, assign, schedule, promote or retain employees;
f. determine the adequacy of the work force;
 g. determine the overall mission of the school district as a unit of government;
 h. take actions to carry out the mission of the school district as a governing unit.
 * * *
The school board expressly reserved broad rights to manage its facilities and work force. These rights encompass the subcontracting of cleaning services at the new high school, unless such right is expressly limited elsewhere in the agreement. See Ohio Association of PublicSchool Employees v. Sylvania City School District Board of Edn. (Jan. 30, 1987), Lucas App. No. L-86-129, unreported, 1987 Ohio App. LEXIS 5690, at *6-7. (Similar management rights clause held to encompass the school board's right to subcontract custodial services).
The applicability of the management rights clause to this situation is not disputed. OAPSE's position was and is that the following two provisions of the agreement expressly limit that right and that, consequently, the school board was required to hire union employees, or at least offer them positions, as custodians at the new high school:
1.3 Recognition
 The Board recognizes the Union as the sole and exclusive bargaining representative of all full time and regular short hour employees in the following departments.
1. Custodial Department
a. custodians
b. groundskeeper
* * *
5.1 Job Postings
 Job postings will be posted in the main office and kitchen, with qualifications listed or available for a period of fourteen (14) work days.
 Applicants will be screened and selected on the basis of attendance and work records, performance appraisals, and job related qualifications, including, in some instances, aptitude tests. Current employees will receive primary consideration to include a face to face interview. Where candidates are essentially equal, seniority with the district shall be the tie-breaker. An employee may request and shall receive a written rationale for being denied.
* * *
The school board asserted all along, however, that the above two provisions do not apply to this situation because there were no "jobs" or "employees" at issue. This Court agrees, and the arbitrator's conclusion to the contrary departed from the plain language of the collective bargaining agreement.
"Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. Because the collective bargaining agreement fails to define the term "employee," it must be given its ordinary meaning. Black's Law Dictionary defines "employee" as "[a] person who works in the service of another (the employer) under an express or implied contract, under which the employer has the right to control the details or work performance." Black's Law Dictionary (7 Ed. 1999) 543. To determine whether one is an employee or an independent contractor, courts examine the nature of the relationship to determine the extent of control that the employer reserves over the completion of the work.
 `[I]f the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created.'
Hamilton v. State Employment Relations Board (1994), 70 Ohio St.3d 210,213, quoting Gillum v. Indus. Comm. (1943), 141 Ohio St. 373, paragraph two of the syllabus.
Despite OAPSE's assertions to the contrary, there was no evidence before the arbitrator that the school board had created any "jobs" or hired any "employees" through its arrangement with Building Care. In fact, the evidence was undisputed that the school board entered into an agreement with Building Care to clean the new high school and that the specific details of how that would be accomplished were determined by Building Care. Prior to reducing the agreement to writing, while the high school was still under construction, Building Care representatives walked through the building to determine the number of workers and the type of cleaning equipment and supplies that would be needed to accomplish the task of regularly cleaning the school. Building Care made a proposal to the school board and the school board accepted the terms of that proposal. The agreement indicated that Building Care would provide cleaning services five days a week. Other than the school board's requirement that members of the cleaning staff be screened for tuberculosis and a prior criminal history and that they wear official "Building Care" clothing for purposes of identification, the employment and supervision of the cleaning staff was left under the exclusive control of Building Care.
Because the school board contracted for an end result, a clean building, and had no right to control the specific details of the cleaning staff's work, it did not employ the members of the cleaning staff, nor were they school board employees. Consequently, OAPSE's argument that the collective bargaining agreement prohibited the school board's agreement with Building Care was unfounded. The arbitrator's decision must be vacated because it conflicted with the express terms of the collective bargaining agreement. Consequently, as OASPE established no violation of the agreement, the trial court's damage award was likewise unfounded and must also be vacated. The school board's assignments of error are sustained. Because the issue of prejudgment interest raised in cross-appeal has become moot, it will not be addressed. See App.R. 12(A)(1)(c).
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
BATCHELDER, P. J., SLABY, J., CONCUR.
[1] This was not a situation that involved the replacement of union positions with independent contractors. According to the school board, whenever a union position became vacant, it filled the vacancy with a member of the union.
[2] Although the school district attempted to appeal that order, because the damage issue was still pending, this Court dismissed the appeal for lack of a final appealable order.