In re Richard/Rebecca COUSINO, Debtors.

Behler–Young Co., Plaintiffs,

v.

Richard Cousino, Jr., et al., Defendants.

No. 05–3090.

United States Bankruptcy Court, N.D. Ohio.

Oct. 26, 2006.

Behler–Young Company, Grand Rapids, MI.

Matthew D. Harper, Anthony R. Modd, Karen Jeannine Wensink, Eastman & Smith Ltd., Toledo.

Rebecca A. & Richard E. Cousino, Toledo.

John L. Jacobson, Toledo.

## DECISION AND ORDER

RICHARD L. SPEER, United States Bankruptcy Judge.

This cause is before the Court on the Plaintiff's Motion for Summary Judgment together with its Memoranda in support. In response, the Defendants filed a Memorandum in opposition, with the Plaintiff thereafter filing a reply thereto. After considering the arguments raised by the Parties, the Court finds, for the reasons that are explained herein, that the Plaintiff's Motion for Summary Judgment should be Granted in Part.

## FACTS

The Defendant/Debtor, Richard Cousino (hereinafter referred to as the "Debtor"), is the sole shareholder and principal of the corporate entity, Andrews Heating and Air Conditioning. The Debtor and his wife, the co-debtor, reside in the state of Ohio. In operating his business, the Debtor contracts with builders and owners to make improvements to real property.

The Plaintiff, Behler–Young Company (hereinafter referred to as the "Plaintiff"), is a Michigan corporation with its principal place of business also in the state of Michigan. The Plaintiff supplies equipment and materials used by contractors, such as the Debtor, in the construction trade. In July of 2001, the Debtor personally guaranteed, on behalf of his corporation, a line of credit extended by the Plaintiff for the purchase of building materials and equipment.

During the course of their business relationship, the Debtor made numerous purchases from the Plaintiff on credit. The equipment and materials purchased from the Plaintiff, on credit, were then used by the Debtor for improvement projects related to his business. As to their physical location, these projects occurred in both the state of Ohio and the state of Michigan.

In December of 2004, the Debtors filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time he filed for bankruptcy protection, the Debtor still owed more than $30,000.00 on his line of credit with the Plaintiff. In response, the Plaintiff commenced this action seeking a determination that all amounts still due and owing under the line of credit are nondischargeable.

## DISCUSSION

■ The Plaintiff's complaint to determine dischargeability is brought pursuant to two statutory sections: (1) § 523(a)(2)(A) and (2) § 523(a)(4). A determination as to the dischargeability of a particular debt is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(I).

Section 523(a)(2)(A) excepts from discharge any debt arising from a false pretense, a false representation, or actual fraud. Similarly, § 523(a)(4), excepts from discharge any debt arising from fraud, but also extends to debts arising from acts of defalcation while acting in a fiduciary capacity, embezzlement and larceny. Together, these sections help to implement, and are at the center of the bankruptcy policy of providing relief to only the honest but unfortunate debtor. *See In re DeTrano*, 326 F.3d 319, 322 (2nd Cir.2003).

On the merits of its right to a favorable ruling under § 523(a)(2)(A) and § 523(a)(4), the Plaintiff seeks summary judgment. Bankruptcy Rule 7056, which adopts Federal Rule of Civil Procedure 56, governs motions brought by parties for summary judgment, providing in relevant part: A party will prevail on a motion for summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Under this standard for summary judgment, the Plaintiff concentrated its arguments primarily on the applicability of § 523(a)(4) and its exclusion from discharge of those debts which arise from acts of defalcation while acting in a fiduciary capacity. In doing so, the Plaintiff takes the position that these two requirements for nondischargeability—defalcation and fiduciary capacity—are applicable as a matter of law because the "monies collected pursuant to the construction and services contracts by [the Debtor] are construction funds and such funds are impressed with a trust by virtue of The Michigan Builder's Trust Fund Act for and on behalf of [the Plaintiff] in this cause." (Doc. No. 36, at pg. 4).

■ The Michigan Builder's Trust Fund Act, as just referenced by the Plaintiff, is set forth in M.C.L.A. § 570.151, and provides:

In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person

making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

The effect of this statute is to impose a trust, with the contractor operating as the trustee, upon the funds paid by any person in connection with a building contract. *Huizinga v. United States*, 68 F.3d 139, 144 (6th Cir.1995). And from a purely legal standpoint, it is proper to equate a violation of the Michigan Builder's Trust Fund Act to that of an act of defalcation while acting in a fiduciary capacity as applied to § 523(a)(4).

■■■ This Court, as well as others,[1] in following precedent established by the Sixth Circuit Court of Appeals, has held that a contractor subject to M.C.L.A. § 570.151 is a fiduciary for purposes of § 523(a)(4). *MPC Cash–Way Lumber Co. v. Collins (In re Collins)*, 266 B.R. 123, 128 (Bankr.N.D.Ohio 2000), *citing Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 257 (6th Cir.1982). Additionally, once the existence of a fiduciary relationship is shown, the threshold to establish that an act of defalcation occurred is low. Defalcation, for purposes of § 523(a)(4), occurs whenever a debtor misappropriates or fails to properly account for those funds held in trust; a showing of a debtor's wrongful intent is not required. *R.E. America Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir.1997).

■■ The arguments of the Debtor before the Court make no direct effort to refute the Plaintiff's position that, according to the terms of M.C.L.A. § 570.151, funds were misappropriated. Instead, the Debtor attacks the applicability of § 570.151, stating that "simply receiving

materials for work which was completed in the State of Ohio is not governed by a statute which clearly imposes liability on a contractor doing business in the State of Michigan." (Doc. No. 40, at pg. 3). In response, the Plaintiff argues that all funds owed to it should be deemed to be held in trust pursuant to § 570.151 because the Debtor "contracted with a Michigan corporation and sent, or should have sent, all money for payment to [Plaintiff] in Michigan." (Doc. No. 41, at pg. 3). In support of this position, the Plaintiff cites to the case of *Accu–Tech Corp. v. Jackson*, 352 F.Supp.2d 831, (E.D.Mich.2005).

■■ In *Accu–Tech Corp. v. Jackson*, the extraterritorial reach of M.C.L.A. § 570.151 was directly addressed, with the court explaining that § 570.151's applicability does not require that every event and/or party be directly affiliated with Michigan—only that there be some "connection" with the state. And on whole, this holding is straightforward and unproblematic. *Id.* at 836. A person's physical presence in the state, the traditional prerequisite for *in personam* jurisdiction, will normally subject that person to the laws of the state. *Accord Rittenhouse v. Mabry*, 832 F.2d 1380, 1384 (5th Cir.1987). Similarly, Michigan's long-arm statute extends the jurisdiction of Michigan courts to the "transaction of any business within the state" by an individual. M.C.L.A. § 600.705.

Although the degree of connectedness with the state of Michigan, as is needed to apply M.C.L.A. § 570.151 to an out-of-state resident, was not specified in *Accu–Tech Corp.*, this Court has no difficulty in finding that, insofar as it concerns those services the Debtor performed in Michigan, a sufficient connection exists; on multiple occasions, the Debtor knowingly

---

1. *See, e.g., Cappella v. Little (In re Little)*, 163     B.R. 497, 499–500 (Bankr.E.D.Mich.1994).

availed himself to the protection of Michigan law by contracting to perform services in the State, with presumably Michigan residents. *Corey v. Cook & Company,* 3 Mich.App. 359, 362–63, 142 N.W.2d 514 (1966). Resultantly, those funds received by the Debtor for services performed in the state of Michigan, being subject to the trust fund created by § 570.151, must be found to be nondischargeable under § 523(a)(4) to the extent that such funds were not first used to pay the Plaintiff as a beneficiary of the trust.

■ However, as already stated, the arguments made by the Debtor did not seriously dispute this holding, at least insofar as it concerned just those services performed in the state of Michigan. Instead, a fair reading of the Parties' respective positions, *supra,* shows that their primary point of contention concerns the extent to which M.C.L.A. § 570.151 is applicable to an out-of-state contractor whose connection with the state is limited to making purchases from a Michigan supplier. Put differently, the issue now before the Court is this: on the sole basis of purchasing supplies/materials from a Michigan business, does § 570.151 impose a trust on the funds received by an out-of-state contractor as the result of performing services in a non-Michigan forum?

■ Statutes of one state are generally not to be given extraterritorial effect. 16 AM. JUR. 2D *Conflict of Laws* § 9 (2006). The Constitution of the United States similarly places limits—such as those arising under the Due Process Clause, the Full Faith and Credit Clause and the Commerce Clause—with regards to the extraterritorial application and reach of a state's statutes. *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 336–37, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 308, 313, 101 S.Ct. 633, 637, 640, 66 L.Ed.2d 521 (1981). Thus, for example, the "Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Id. citing Edgar v. MITE Corp.,* 457 U.S. 624, 642–643, 102 S.Ct. 2629, 2640–2641, 73 L.Ed.2d 269 (1982). On the other hand, statutes enacted by a state legislature must be presumed to apply to all rights which arise and to all persons who come within the jurisdiction of the state.

In support of affording M.C.L.A. § 570.151 an extraterritorial application as to a contractor, such as the Debtor, whose ties with the state are limited to purchasing supplies, the Plaintiff again relies heavily on the case of *Accu–Tech Corp.,* and its just discussed connectedness approach, stating that, "Michigan has an interest in protecting and enforcing a regulatory statute where the plaintiff is a Michigan entity." (Doc. No. 41, at pg. 3). In *Accu–Tech Corp.,* the Court found that § 570.151 could, as the Plaintiff espouses, apply to services performed by a contractor outside of Michigan. And again, as a strictly legal matter, the Court cannot disagree: as noted in *Accu–Tech Corp.,* § 570.151 contains no explicit requirement that an event or party be affiliated with Michigan. Thus, so long as a valid jurisdictional nexus otherwise exists between a party and the state of Michigan, such as through the state's long-arm statute, § 570.151's breadth may be read so as to extend beyond the borders of Michigan.

■ However, the Court in *Accu–Tech Corp.* also observed that inherent constraints are placed on § 570.151's extraterritorial application. Among these, there exists a presumption against applying a Michigan statute extraterritorially, a position taken from the Michigan Supreme Court decision in *Sexton v. Ryder Truck*

*Rental, Inc.,* 413 Mich. 406, 320 N.W.2d 843[2] wherein it was explained:

> The general rule of law is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. This extraterritoriality rule has a long history in international and common law. However, as populations and technology progressed and travel between countries and among the states increased to an everyday occurrence, exceptions to the general rule of extraterritoriality were created so that it is now recognized that a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries.
>
> . . .
>
> Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication. Accordingly, a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it.

413 Mich. 406, 434, 320 N.W.2d 843, 855 (1982) (internal quotations and citations omitted).

Thus, while the Court in *Accu–Tech Corp.* was willing to extend § 570.151's applicability to projects occurring outside the state of Michigan, it did so only after factoring in the strong connections of the parties to Michigan. *Id.* Among these connections: the contractor was a Michigan entity; the supplies were delivered to Michigan; and the funds were mishandled in Michigan. The underlying import of these connections: the "Defendant[ ] should expect Michigan law to apply when most of the contacts are associated with the state." *Id.* at 837. The Court also observed that, although the supplier was from out-of-state, it maintained a presence in Michigan, and was "therefore entitled to the protections of the state." *Id.* at 836.

By comparison, for those projects performed by the Debtor in Ohio, none of the foregoing connections are present, with the Debtor's sole connection with the state of Michigan hinging on his purchase of supplies. At best, this dissimilarity with *Accu–Tech Corp.*, and the lack of connection with the state of Michigan it represents, makes the application of § 570.151 to those projects that were accomplished in Ohio difficult. But firmly tipping the balance away from applying § 570.151 under these conditions is this additional lack of connection: the properties improved by the Debtor in Ohio were presumably accomplished for Ohio residents who likewise had no connection with Michigan. This is simply the reverse of the situation earlier where, with regards to projects completed in Michigan for Michigan residents, the Court had no difficulty in finding that a sufficient connection existed to warrant applying § 570.151. The reason for attaching such importance to the project's location comes from the structure of the statute itself.

---

**2.** As Michigan law is being applied, this Court is bound to follow this decision. *C & H Entertainment, Inc. v. Jefferson County Fiscal Court,* 169 F.3d 1023, 1025 (6th Cir.1999) (holding that when applying state law, a federal court is bound to follow the highest court in the state).

Under Michigan law, a statute is to be interpreted to ascertain and facilitate the Legislature's intent. *Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc.,* 456 Mich. 511, 515, 573 N.W.2d 611 (1998). First, and foremost, this requires examining the language of the statute itself. *Id.* In this matter, a close examination of § 570.151, *supra,* shows that it only applies when the "building contract fund" is "paid by any person to a contractor . . . ."

Necessarily, this cannot be a supplier of materials, such as the Plaintiff, but will rather constitute the person for whose benefit the building contract is made, most often the owner of the property. *See Koppers Co., Inc., v. Garling and Langlois,* 594 F.2d 1094, 1099–1100 (6th Cir.1979) (discussing distinction between owner and contractor). The reason for this: § 570.151 differentiates between the "person making the payment" and a "materialmen" such as the Plaintiff.[3] It therefore follows that any protections afforded to the Plaintiff are derivative, arising only if the owners of the property, i.e., those who made the payments, are entitled to the statute's protections. For the Plaintiff, this leads to a kind of circular reasoning.

For those projects that occurred in Ohio, the owners of the property are presumably Ohio residents. Hence, the Plaintiff's position—that it is entitled to the protection of § 570.151 for those projects in which its supplies were used for Ohio residents—hinges on Ohio property owners being the primary beneficiaries of the protection offered by the trust created under § 570.151. Yet, it seems unlikely that the Michigan legislature, in enacting the statute, was acting with Ohio residents and property owners in mind. *See Koppers Co., Inc. v. Garling & Langlois,* 594 F.2d 1094, 1100

(6th Cir.1979) (§ 570.151 was enacted to protect owners from financially irresponsible general contractors by creating an alternative to the mechanic's lien laws). Instead, it is safe to assume that the primary beneficiary of the trust created by § 570.151, and hence the entity from whom other parties' rights are derived, must be a Michigan resident or a party having close ties to the state of Michigan. Hence, the circular reasoning of the Plaintiff's position: both the Plaintiff and Ohio property owners are dependent on the other for standing under § 570.151.

Therefore, for all the reasons just explained, the Court, on the Plaintiff's Motion for Summary Judgment under § 523(a)(4), holds as follows: for those services the Debtor performed in the state of Michigan, § 570.151 is applicable. Thus, any funds he received from such projects were held in trust for the benefit of the Plaintiff and thus are nondischargeable under § 523(a)(4). But for those services he performed solely in the state of Ohio, it is just the opposite: § 570.151 has no applicability notwithstanding that the Debtor may have purchased the materials for his services from the Plaintiff, a Michigan supplier. Resultantly, as it relates to these services, the Plaintiff's Motion for Summary Judgment under § 523(a)(4) must be Denied.

The Plaintiff also seeks summary judgment pursuant to § 523(a)(2)(A). However, as this Court has previously held: "state of mind issues, such as fraudulent intent under § 523(a)(2)(A), are generally not appropriate for resolution on summary judgment unless all the reasonable inferences that could be drawn from the evidence clearly defeat the plaintiff's claim." *Bernard Lumber v. Patrick (In re*

---

**3.** Under the statutory interpretation doctrine of *ejusdem generis,* specific and general words of a statute are given effect so that no word is rendered superfluous.

*Patrick)*, 265 B.R. 782, 787 (Bankr. N.D.Ohio 2001). In this matter, the Debtor has strenuously denied any intentional wrongdoing, an assertion which cannot be definitively dismissed based upon the record now before the Court. As such, the Plaintiff's Motion for Summary Judgment under § 523(a)(2)(A) must be Denied, and accordingly, the Plaintiff's cause of action brought under § 523(a)(2)(A) will be set for Trial.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Therefore, consistent with this Court's holdings in this Decision, it is

***ORDERED*** that, in accordance with 11 U.S.C. § 523(a)(2)/(4), the Motion for Summary Judgment filed by the Plaintiff, Behler–Young Company, is hereby GRANTED IN PART, and DENIED IN PART.

**IT IS FURTHER ORDERED** that, on the Plaintiff's cause of action under 11 U.S.C. § 523(a)(2)(A), this matter be, and is hereby, set for a Trial on Wednesday, December 6, 2006, at 1:30 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

**IT IS FURTHER ORDERED** that on, or before Monday, November 27, 2006, the Parties exchange and file with the Court pre-trial memoranda, lists of witnesses, lists of exhibits, and stipulations.

**IT IS FURTHER ORDERED** that the failure to file any of the above items may result in the Trial being continued, witnesses or exhibits not being introduced into Trial, or sanctions being imposed by the Court.