[Cite as *Green v. Admr., Ohio Bur. of Workers Comp.*, 2018-Ohio-2618.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| JAMES GREEN, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | Case No. 17CA17 |
| v. | : | |
| | : | DECISION AND |
| ADMINISTRATOR, OHIO BUREAU OF | : | JUDGMENT ENTRY |
| WORKERS' COMPENSATION, et al., | : | |
| | : | |
| Defendants-Appellees. | : | RELEASED 06/26/2018 |

APPEARANCES:

Kurt A. Knisley, Knisley Law Offices, Columbus, Ohio, for plaintiff-appellant James Green.

Mike DeWine, Ohio Attorney General, and Kevin J. Reis, Assistant Ohio Attorney General, Columbus, Ohio, for defendant-appellee Administrator, Ohio Bureau of Workers' Compensation.

Steven M. Willard, Bannon, Howland & Dever Co., L.P.A., Portsmouth, Ohio, for defendant-appellee James Chapman.

Hoover, P.J.

{¶ 1} Plaintiff-appellant James Green ("Green") filed a claim for workers' compensation benefits after he was injured while logging. The claim was denied administratively on the ground that Green was an independent contractor, not an employee. Green appealed the administrative decision to the Gallia County Common Pleas Court pursuant to R.C. 4123.512. Following a bench trial, the Gallia County Common Pleas Court determined that Green had failed to establish that he was an employee, and listed six reasons for its finding. Thus, the court affirmed the administrative agency's denial of his claim for benefits.

{¶ 2} On appeal to this Court, Green first contends that the trial court's findings of fact and conclusions of law are insufficient and that the trial court should have included citations to statutory authority or legal precedent to support its decision. We disagree with Green's first contention. Rather, we conclude that the trial court's findings of fact and conclusions of law are sufficient for us to conduct a meaningful judicial review. Next, Green argues that the trial court erred in qualifying two different witnesses as experts, and in admitting and expressly deferring to their testimony. We conclude from the record before us that the testimony at issue did not constitute expert testimony; and the trial court did not abuse its discretion in admitting the testimony. Further, even if the testimony did constitute expert testimony, we note that its admission was harmless since similar witness testimony was admitted without objection; and Green cannot show that the outcome of the proceedings would have been different. Finally, Green argues the trial court's decision is against the manifest weight of the evidence, and that the trial court did not properly consider and apply the appropriate law. We disagree and conclude that competent and credible evidence supports the judgment of the trial court. Accordingly, we find no merit in any of Green's assignments of error; and we affirm the trial court's judgment.

### I. Facts and Procedural Posture

{¶ 3} Green filed a workers' compensation claim with the Ohio Bureau of Workers' Compensation ("BWC") alleging that he sustained injuries to his neck, back, hip, and head while performing logging work under the direction of James Chapman ("Chapman") on November 19, 2013. The claim was initially disallowed by the BWC, and was subsequently denied administratively by the District and Staff Hearing Officers at the Industrial Commission. The District Hearing Officer's order denying the claim provided as follows:

* * * After consideration of the facts in file and ascertained at hearing, the District

Hearing Officer finds that Mr. Chapman did not exercise the requisite control

over the manner and means of performing the work sufficient to establish an

employee-employer relationship. * * * The District Hearing Officer finds that the

relationship was one person helping another out with an activity and being paid

for it.

The administrative order issued by the Staff Hearing Officer affirmed the order of the District

Hearing Officer. The Staff Hearing Officer further held:

* * * It is the finding of the Staff Hearing Officer that the Claimant did not meet

his burden of proof of an employee-employer relationship with James Chapman. *

* * The Staff Hearing Officer finds that the evidence does not establish an

employee-employer relationship. The relationship described establishes the

Claimant worked with Mr. Chapman, not for Mr. Chapman. Mr. Chapman did not

control the manner or means in which the work was performed, he merely

identified the trees to be harvested. * * * The Staff Hearing Officer finds an

employee-employer relationship was not established.

{¶ 4} After the Industrial Commission refused a final administrative appeal, Green filed a

notice of appeal and complaint with the Gallia County Common Pleas Court pursuant to R.C.

4123.512. The matter proceeded to a bench trial.

{¶ 5} At the bench trial, the following facts were adduced:

{¶ 6} In the fall of 2013, Chapman and Ricky Whitt ("Whitt") had been logging the

Dennison property in Gallia County, Ohio; trees were being cut down, de-limbed, and

transported to the sawmill. Chapman knew that Green had extensive logging experience, and was

looking for work; so he hired Green at a rate of $80 per day to de-limb the fallen trees so that they could be hooked up by cable and dragged by bulldozer out of the woods to a landing yard for transport to the sawmill. It is uncontroverted that Green presented himself as an experienced logger. Green testified at the bench trial that he was an experienced logger, that he had experience in the type of logging being conducted on the Dennison property, and that he had served as the contractor on his own logging projects. Chapman testified that Green was specifically hired because he would not need to be trained or directly supervised given his experience. Chapman only needed to tell Green what work needed to be performed.

Q.      Okay. Did uh, during the course of that [first] workday did Mr. Chapman direct you as to the type of work you'd perform?

A.      [Green:] Yeah. He told me I would be delimbing and hooking the cable and stuff up to the loader.

Q.      Um, did he specify anything else in terms of directions in the type of work you're performing?

A.      [Green:] No.

* * *

Q.      Okay. When you were brought out there you weren't given any instructions on how to do the work, you already knew how to delimb a tree didn't you?

A.      [Green:] Yeah, yes.

Q.      He didn't say go to this tree and cut these limbs off in this fashion and in this order did he?

A.      [Green:] No.

Q.      You were brought there because you had experience and knew how to do this?

A.      [Green:] Yeah.

Q.      And without any instructions or control by my client, isn't that right?

A.      [Green:] Yeah.

* * *

Q.      No time that you were working there Mr. Chapman didn't come to you and say hey, you're doing this wrong, I want you to do it this way. You chose how to delimb the trees right?

A.      [Green:] Yes.

Q.      He didn't need to because of your experience and your knowledge in the logging field, is that right?

A.      Yes.

{¶ 7} There was also testimony at the bench trial regarding the logistics of this particular logging project, and logging projects in general. The owner of the property containing the trees to be harvested was the mother of Michael Dennison. The Dennisons reached an agreement with Chapman to harvest the trees and then transport them to a sawmill. Michael Dennison together with Chapman would identify the particular trees to be cut; then the trees would be felled, de-limbed, and then dragged to the landing area or landing yard where it is placed on a truck for transport to the sawmill. At the sawmill, the trees are priced and the sawmill makes payments to the owner (the Dennisons), the logger (Chapman) and his workers (Whitt and Green), and to the trucking company according to a pre-arranged agreement[1]. The sawmill paid Green directly, at

---

[1] In this case, the property owner received 50% of the proceeds, and Chapman received the other 50%. The sawmill paid Whitt, Green, and the driver of the logging truck with monies from Chapman's share of the proceeds.

Chapman's direction; however it did not withhold taxes, as the logger and his employees were responsible for their own taxes and insurance.

{¶ 8} Chapman testified that he hired Green to help with logging the Dennison property only. Chapman testified that at the time of the initial meeting, it was established that Green would be working as an independent contractor; and that Green would be responsible for paying his own taxes, insurance, and workers compensation. Michael Dennison testified that he overheard parts of this initial conversation between Chapman and Green, and verified that Chapman told Green that he would be responsible for paying his own taxes and that if Green got hurt, it would be Green's responsibility. No contracts, applications, or IRS tax withholding forms were completed before Green started work on the job site. As previously mentioned, Green received compensation directly from the sawmill. Green was free to leave at any time from the job site and was not required to be there everyday.

{¶ 9} Green testified that he did not recall ever being informed that he would be an independent contractor, or be responsible for his own insurance coverage and taxes. While on the job, Green used equipment owned by Chapman.

{¶ 10} On November 19, 2013, three days after being hired, Green was struck by a falling tree and sustained injuries to his neck, back, left hip, and head.

{¶ 11} Following the bench trial, a transcript was prepared and the parties submitted written closing arguments. The trial court issued a Judgment Entry on August 1, 2017, holding that Green was not an employee; and, thus, not entitled to participate in the workers' compensation fund. In its Judgment Entry, the trial court listed six reasons for its finding:

1. Chapman told him that he was an independent contractor and would have to pay his own taxes, workers compensation and disability insurance.

2. Dennison heard Chapman tell Green that he would have to pay his own taxes and that it was his responsibility if he were hurt on the job.

3. Witt [sic] and Humphrey know that workers such as Witt [sic] and Green are independent contractors and must pay their own taxes, insurance and workers compensation.

4. Smith, Witt [sic], Chapman, and Humphrey know that S and J [sawmill] pays workers at the direction of Chapman.

5. Chapman did not instruct nor supervise Green in de-limbing logs and hooking up the chains so the logs could be moved.

6. Chapman was flexible with regards to daily starting and ending time so long as he, Witt [sic] and Green worked together to get the job done.

{¶ 12} Thereafter, the trial court issued an entry entitled "Finding of Facts and Conclusions of Law", which stated in its entirety:

The Court filed a judgment entry on August 1, 2017, incorporating therein findings of fact and conclusions of law. The judgment entry is incorporated herein as if fully rewritten.

Green then filed a timely notice of appeal.

## II. Assignments of Error

{¶ 13} Green asserts the following assignments of error for review:

Assignment of Error No. 1:

The Court Failed to Provide Their Conclusions Of Law, Rendering It Impossible To Determine If The Appropriate Law Was Followed.

Assignment of Error No. 2:

The Court Relied On Inadmissible Industry Standard Evidence From Witnesses Who Were Not Qualified To Provide An Opinion Regarding A Prevailing Industry Standard.

Assignment of Error No. 3:

The Court Evidently Did Not Apply The Appropriate Law, As The Evidence Demonstrates The Court's Decision Was Against The Manifest Weight Of The Evidence.

## III. Law and Analysis

{¶ 14} At the core of this workers' compensation case, is the issue of whether an employer-employee relationship existed between Chapman and Green. Under Ohio's workers' compensation law, there must be an employer-employee relationship before an injured worker may participate in the benefits of Ohio's workers' compensation fund. *See Fisher v. Mayfield*, 49 Ohio St.3d 275, 276, 551 N.E.2d 1271 (1990), quoting R.C. 4123.01(C) (to demonstrate entitlement to participate in the Ohio State Fund, an injured worker must prove they sustained an injury " 'in the course of, and arising out of, the injured employee's employment.' "). "Because an independent contractor is not an employee for purposes of workers' compensation law, the resolution of this question determines the employer's obligation to contribute to, and the applicant's eligibility for benefits from, the State Insurance Fund." *Bostic v. Connor*, 37 Ohio St.3d 144, 145, 524 N.E.2d 881 (1988). Both the administrative agency and the trial court held that there was no employer-employee relationship involved in this case; and, therefore, that Green was not entitled to receive benefits under Ohio's worker's compensation law. In some respect, all of Green's assignments of error touch upon this important issue.

### A. The Trial Court's Findings of Fact and Conclusions of Law

{¶ 15} In his first assignment of error, Green alleges that the trial court erred in failing to provide sufficient findings of fact and conclusions of law for appellate review. Specifically,

Green argues that because the trial court's judgment entry lacks any citations to statutory authority or legal precedent it is impossible to determine what authority the court relied upon in finding that Green was not an employee of Chapman's.

{¶ 16} When a party requests that the court reduce its findings of fact and conclusions of law to writing in an action tried without a jury, as is the case sub judice, the court has a mandatory duty to do so under Civ.R. 52. *In re Adoption of Gibson*, 23 Ohio St.3d 170, 173, 492 N.E.2d 146 (1986). " 'The purpose of the rule is * * * to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.' " *Id*. at 172, quoting *Werden v. Crawford*, 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982); *see also Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012-Ohio-3736, ¶ 40 ("The purpose of issuing findings of fact and conclusions of law under Civ.R. 52 is to establish a record so that reviewing courts can conduct meaningful review.").

{¶ 17} The test for determining whether a trial court's opinion satisfies the requirements of Civ.R. 52 is whether the contents of the opinion, when considered together with other parts of the record, form an adequate basis upon which to decide the narrow legal issues presented. *Nolan* at ¶ 40. Findings and conclusions "must articulate an adequate basis upon which a party can mount a challenge to, and the appellate court can make a determination as to the propriety of, resolved disputed issues of fact and the trial court's application of the law." *Kroeger v. Ryder*, 86 Ohio App.3d 438, 442, 621 N.E.2d 534 (6th Dist.1993).

{¶ 18} Here, the trial court's findings of fact and conclusions of law satisfy Civ.R. 52. As outlined above, the trial court made separate findings of fact to support its ultimate conclusion that Green was not an employee of Chapman's. The judgment entry lists the facts and evidence separately from its legal conclusion. Furthermore, when we consider the trial court's opinion

together with the testimony provided at trial, an adequate basis exists for us to determine the ultimate issue of whether Green was an employee of Chapman's, or merely an independent contractor. Finally, that the trial court did not cite to any legal authority or precedent in its opinion does not affect this Court's ability to examine the issues presented on appeal. Accordingly, we overrule Green's first assignment of error.

### B. The Admissibility of Witness Testimony

{¶ 19} In his second assignment of error, Green argues that the trial court erred in qualifying two different witnesses as experts, and in admitting and expressly deferring to their expert testimony.

{¶ 20} The third rationale provided by the trial court in its Judgment Entry filed on August 1, 2017, expresses that witnesses "Witt [sic] and [Timothy] Humphrey know that workers such as Witt [sic] and Green are independent contractors and must pay their own taxes, insurance and workers compensation." Green contends that Whitt's and Humphrey's testimony pertained to a prevailing industry standard; and thus the trial court erred in relying upon their testimony because neither Whitt nor Humphrey are experts in the industry.

{¶ 21} As an initial matter, we note that prior to trial Green advanced a motion in limine, seeking to exclude any testimony from Humphrey relating to prevailing industry standards, arguing that Humphrey was not an expert in the logging industry. The trial court deferred determination of the motion. At trial, the court permitted Humphrey to testify; and later overruled the motion in limine noting in the August 1, 2017 Judgment Entry that Humphrey was "sufficiently experienced in the industry to testify" about it. Whitt also testified at trial without objection or restriction. Now, Green contends that Humphrey and Whitt relied exclusively on their own prior experiences in testifying about the expert matter of industry standards; and that

combined with their pre-existing relationship with Chapman, they were incapable of providing truly objective evidence of an industry standard. Thus, Green argues that the trial court abused its discretion in admitting their testimony, and in relying on it in its determination of the employment issue.

{¶ 22} "Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review." *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013–Ohio–1507, 989 N.E.2d 35, ¶ 22, citing *State v. Hancock,* 108 Ohio St.3d 57, 2006–Ohio–160, 840 N.E.2d 1032; *see also State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 19 ("It is well established that a trial court's decision to admit evidence is an evidentiary determination within the broad discretion of the trial court and subject to review on an abuse-of-discretion standard."). Furthermore, the determination of the admissibility of expert testimony is within the discretion of the trial court; and its discretion will not be disturbed absent an abuse of that discretion. *See Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9. An abuse of discretion connotes that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *Id.*

{¶ 23} Evid.R. 702 provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other

specialized information. * * *

{¶ 24} Here, we conclude that the testimony provided by Humphrey and Whitt was not "expert" testimony. While Humphrey and Whitt did testify about the logging industry in general terms, their testimony did not relate to matters beyond the knowledge or experience possessed by lay persons, and was not based on scientific, technical, or other specialized information. For instance, they did not testify about the standard of care for loggers or logging; or about the physics involved in felling a tree. Rather their testimony focused on customs and practices in the logging industry, and was offered to establish the types of relationships that exist between the various parties involved in the logging industry. This testimony was relevant because the "type of business" is one of the factors identified by the Ohio Supreme Court in determining whether an employee or an independent contractor relationship exists. *See infra*. Thus, we conclude that the trial court did not abuse its discretion in admitting the testimony of Humphrey and Whitt that related to the logging industry in general.

{¶ 25} In any event, even if we were to assume *arguendo* that Humphrey and Whitt's testimony constituted expert testimony, any error in allowing the testimony was harmless. *See* Civ.R. 61 (explaining that reviewing courts "must disregard any error or defect in the proceeding" that did not affect a party's substantial rights); *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 26, quoting *Smith v. Flesher*, 12 Ohio St.2d 107, 110, 233 N.E.2d 137 (1967) (explaining that " 'in order to secure a reversal of a judgment,' " a party " 'must not only show some error but must also show that that error was prejudicial to him' "); *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, 827 N.E.2d 365, ¶ 17 (10th Dist.) ("When avoidance of the error would not have changed the outcome of the

proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party."). For purposes of argument, even if we believed that the trial court should have granted Green's motion in limine, and prevented Humphrey and Whitt from testifying, Green cannot show that the result of the proceedings would have been different. This is because most of the testimony provided by Humphrey and Whitt was repetitive to testimony that had been admitted through other witnesses, including testimony from Chapman and Green himself. Furthermore, even if the custom and practice evidence was excluded from consideration, there was other sufficient evidence to support the trial court's ultimate conclusion that Green was an independent contractor. Consequently, any error the trial court committed did not affect Green's substantial rights and constitutes harmless error that we must disregard.

{¶ 26} Accordingly, Green's second assignment of error is overruled.

### C. The Manifest Weight of the Evidence

{¶ 27} In his third assignment of error, Green contends that the trial court's judgment denying his claim for workers' compensation benefits was against the manifest weight of the evidence. In particular, Green argues that under a proper application of the law, the evidence supports a conclusion that he was an employee of Chapman's, and thus eligible to collect workers' compensation benefits for the injuries sustained while on the job.

{¶ 28} "Generally, we will uphold a trial court's judgment as long as the manifest weight of the evidence supports it—that is, as long as some competent and credible evidence supports it." *Bevens v. Wooten Landscaping, Inc.,* 4th Dist. Pike No. 11CA819, 2012–Ohio–5137, ¶ 12, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 17; *Shemo v. Mayfield Hts.,* 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000); *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. "This standard of

review is highly deferential and even 'some' evidence is sufficient to support a court's judgment and to prevent a reversal." *Id.,* citing *Barkley v. Barkley,* 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997); *William v. Cole,* 4th Dist. Adams No. 01CA725, 2002–Ohio–3596, ¶ 24.

{¶ 29} "Although appellate courts will ordinarily afford great deference to a trial court's factual findings, appellate courts do not afford any deference to a trial court's application of the law. Instead, appellate courts must independently review whether a trial court properly applied the law." *Id.* at ¶ 13, citing *Lovett v. Carlisle,* 179 Ohio App.3d 182, 2008–Ohio–5852, 901 N.E.2d 255, ¶ 16 (4th Dist.); *Pottmeyer v. Douglas,* 4th Dist. Washington No. 10CA7, 2010–Ohio–5293, ¶ 21.

{¶ 30} The principal inquiry in determining whether an employer-employee relationship exists is whether the alleged employer reserves the right to control the manner or means of doing the work. *See Gillum v. Indus. Comm.*, 141 Ohio St. 373, 374, 48 N.E.2d 234 (1943) ("[I]f the employer reserves the right to control the manner or means of doing the work, the relationship is that of master and servant, while if the manner or means is left to the operative who is responsible to the employer for the result only, an independent contractor relationship exists."). Additional factors to consider in determining whether an employee or an independent contractor relationship exists include, but are not limited to:

> such indicia as who controls the details and quality of work; who controls the
>
> hours worked; who selects the materials, tools and personnel used; who selects
>
> the routes travelled; the length of employment; the type of business; the method
>
> of payment; and any pertinent agreements or contracts.

(Citations omitted.) *Bostic*, 37 Ohio St.3d at 146, 524 N.E.2d 881.

{¶ 31} In support of his assignment of error, Green focuses on the eight factors enumerated in *Bostic*, and argues that at least five of the factors when applied to the facts of this case favor a finding that he was an employee of Chapman's. He cites trial testimony that allegedly establishes, inter alia, that Chapman controlled the details and quality of the work performed; that Chapman retained the right to terminate his employment at will; that Chapman controlled the hours worked; that Chapman provided the materials and equipment necessary to complete the job; and that he had no choice but to follow the route established by Chapman when deciding which trees to de-limb and in which order.

{¶ 32} Green seems to discount the principal test in determining the nature of the employment relationship– i.e., whether the employer reserves the right to control the manner or means of doing the work. *Gillum* at 374. An independent contractor relationship exists "if the manner or means is left to the operative who is responsible to the employer for the result only." *Id*. Moreover, Chapman could retain some control while maintaining an independent contractor relationship with Green. *Id*. at 382. "As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control, at least to enable him to see that the contract is performed according to specifications." *Id*.

{¶ 33} In the case sub judice, the evidence does not support the conclusion that Chapman retained control over the means or manner of performance of the work done by Green. Rather, the evidence shows that Chapman lacked control over the specific details of Green's work; and was only concerned with the final result. In other words, the manner and means by which Green de-limbed the trees was left to his judgment.

{¶ 34} While Chapman hired Green to specifically de-limb the fallen trees and prepare them for transport, and reserved the right to terminate Green for his failure to perform, nothing in

the record indicates that Chapman had the power to control Green's activities to the extent that would normally exist between an employer and an employee. For instance, there were no set hours in which Green was required to work per day or per week. There was no logging of hours. There was no withholding of taxes. There was no training. There was no direct supervision. There was no agreement requiring Green to work for Chapman exclusively. Green received his compensation directly from the sawmill. There was no expectation that the relationship between the two would exist beyond the Dennison job.

{¶ 35} In his appellate brief, Green points out some instances where his testimony differed from the testimony of the other witnesses, and from the findings of fact announced by the trial court. While in a few limited circumstances conflicting evidence did exist, we note that the trial court was in the best position to view the demeanor, gestures, and voice inflections of the witnesses in order to judge the credibility of the evidence. *See Holiday Haven Members Assn. v. Paulson*, 4th Dist. Hocking No. 13CA13, 2014-Ohio-3902, ¶ 17 ("issues of evidence weight and credibility are generally left to the trier of fact to decide").

{¶ 36} In sum, competent and credible evidence supports the conclusion that Chapman did not exert the requisite control over the work being performed by Green necessary to establish an employer-employee relationship. Green was brought to the job site because he was an experienced logger. He was brought to the job site to de-limb fallen trees, which required no training or instruction. Green was not told how to de-limb the trees, but rather did so independently without any control exerted by Chapman. Green and Chapman negotiated the rate of pay. When his work was complete for the day, Green was free to leave regardless of the hours worked or the time of day. Green was also free to work on any other jobs at any time and without repercussion. The fact that Green used a chainsaw owned by Chapman is not determinative of

the issue when viewed in conjunction with the other evidence. Furthermore, it is apparent that the trial court correctly applied the law. Accordingly, we conclude that the trial court's judgment was not against the manifest weight of the evidence. Green's third assignment of error is overruled.

### IV. Conclusion

{¶ 37} Having found no merit in the assignments of error raised by Green, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court

By:_____
        Marie Hoover, Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**